510 A.2d 382

Violet Bernardini, Petitioner *v.* Workmen's Compensation Appeal Board (Italian Marble Mosaic Company), Respondents.

Submitted on briefs November 21, 1985, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*John M. Cleary,* for petitioner.

No appearance for respondents.

OPINION BY JUDGE PALLADINO, May 30, 1986:

This is an appeal by Violet Bernardini (Petitioner)[1] from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision which dismissed Petitioner's fatal claim petition. We affirm.

Petitioner's husband, Mario Bernardini (Decedent) had been employed by Italian Marble Mosaic Company (Employer) as a tile layer for twenty years prior to his death on September 22, 1976. On that date, Decedent reported to work at 8:00 a.m. At approximately 8:30 a.m. Decedent collapsed and he was taken to a local hospital. Later that same day, while Decedent was being transported to another hospital, he died of a dissecting aneurysm of the aorta. Petitioner filed a fatal claim petition which, after several referee's hearings, was denied. The referee concluded that the cause of

---

[1] Petitioner, Violet Bernardini, died on July 10, 1981, and her estate is proceeding with the limited claim for benefits which would have accrued until the date of her death.

Decedent's death was not related to his employment. The Board affirmed the referee's decision.

Petitioner now appeals to this Court asserting that the referee erred: (1) by rejecting the testimony of Petitioner's expert medical witness as equivocal; and (2) by relying on the testimony of Employer's expert medical witness. We conclude that both arguments are without merit.

Petitioner's expert medical witness, Dr. Shubin, testified that he did not examine or treat Decedent, but that he had reviewed Decedent's medical records. Based upon this review and the circumstances surrounding Decedent's death, as related to him by Petitioner's attorney, Dr. Shubin testified as follows:

Q. Now, as that is ammended [sic], Doctor, to include the facts that I just put in, do you have an opinion as to whether there was a causal connection; and this opinion must be based on reasonable, medical certainty between what was diagnosed as a ruptured dissecting aneurysm and the work activities of the decedent on September the 22nd, 1976?

A. Yes, I do.

Q. Doctor, what is that opinion?

. . . .

[I]n my opinion, Mr. Bernardini's dissecting aneurysm and death was [sic] due to his activities the day of employment on the day of his death.

The strenuous work that he was performing, his terminal illness with this onset while he was working caused the rupture of the aneurysm and death was possibly related to severe stress of his employment.

The strenuous duties he was performing on the day that he was striken [sic] aggravated an

apparent asymptomatic previously existing condition which was related to his employment

Q. Doctor, I'm afraid I don't fully understand your answer.

Were the previous conditions that you just talked about related to his employment?

A. No, sir.

Q. What was the previous condition?

A. This man died of a ruptured aneurysm after having an acute dissection to the wall of the aneurysm.

Dr. Shubin further testified that Decedent also had pre-existing atherosclerotic and arteriosclerotic cardiovascular disease, that Decedent's physical work on the day of his death caused increased pressure in the chest, and that "the increased pressure was the straw that broke the camel's back and caused perforation." Finally, on cross-examination and re-direct the witness testified as follows:

Q. Do you have any reason to believe that Mr. Bernardini was doing anything more stressful on this day than he had on any other day for the last 20 years?

A. I don't have any reason to think it was any different. . . .

Even if he had been doing the same work, this is a gradual process, as I told you. I do not feel that necessarily the acute events of that day was [sic] the only cause. I think it was an accumulation of working, doing physical work which was above and beyond what he should have done if he knew what his condition was.

. . . .

[Re-direct]

Q. Doctor, you said that it wasn't the only cause of the rupture of the aneurysm.

Was the work and the stress produced by that work a contributing factor to the rupture?

A. Yes. I think the prior days or weeks or months or years would be a contributory factor of his final demise and rupture.

Q. Specifically was the work that he was doing on the morning of September the 22nd, 1976, a contributing factor?

A. Yes, it was.

The referee concluded, and the Board affirmed the conclusion, that this testimony is equivocal because the witness initially stated that Decedent's death was *possibly* related to his employment.

Petitioner argues that, reviewing the testimony as a whole, it is not equivocal. Petitioner is correct in her assertion that the question of whether a physician's testimony is unequivocal must be decided from an examination of the entirety of the testimony. *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board;* 66 Pa. Commonwealth Ct. 579, 445 A.2d 843 (1982). Our scrutiny of Dr. Shubin's entire testimony, however, leads us to conclude that the testimony is equivocal. The witness stated several times that Decedent's work was not the only cause of his death, but rather that his job was a contributing factor. The doctor did not state how large or significant a part it played. Also, Dr. Shubin affirmatively stated that the other contributing factors, the preexisting aneurysm and atherosclerotic and arteriosclerotic cardiovascular disease were not work-related. Considering these factors in conjunction with the doctor's original statement that Decedent's death was "possibly" related to his employment, we conclude that the testimony is equivocal.

Petitioner's second argument is that the testimony of Employer's expert medical witness, Dr. Catherman, is not competent to support the referee's finding that

Decedent's death was not causally related to his employment because the witness applied a wrong legal standard to the facts of this case.

Dr. Catherman testified that a dissecting aneurysm is something that happens abruptly and that it is not caused by the physical or emotional stresses of daily life. Upon cross-examination Dr. Catherman was asked whether trauma could cause a dissecting aneurysm and he responded that a severe trauma such as a significant fall or a motor vehicle collision might cause a dissecting aneurysm. Dr. Catherman further testified that because there was no such trauma on the day of Decedent's death, and because Decedent on that day was engaged in a work activity which he had performed for twenty years, it was his professional opinion that Decedent's death was not causally related to his employment.

Petitioner now argues that the Doctor based his opinion on the absence of unusual or extraordinary strain, and in doing so has applied a wrong legal standard, because a claimant is no longer required to show unusual strain in order to receive benefits for a work-related heart attack. *See Westinghouse Electric Company v. Workmen's Compensation Appeal Board,* 59 Pa. Commonwealth Ct. 558, 430 A.2d 399 (1981). This argument is without merit. Dr. Catherman was testifying as to a matter of fact, he was not applying a legal standard to the facts. It is for the referee to apply the law to the facts presented. Dr. Catherman was an expert medical witness, and as such he only testified as to the facts of the case. His testimony was that there was no causal connection between Decedent's death and his work because, as a matter of fact, there was no severe trauma which may sometimes cause a dissecting aneurysm. This does not constitute applying a wrong legal standard.

Accordingly, the order of the Board is affirmed.

ORDER

AND NOW, May 30, 1986, the order of the Workmen's Compensation Appeal Board, at A-85916, dated February 2, 1984, is affirmed.