COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Annunziata and Bumgardner
Argued at Norfolk, Virginia


CITY OF PORTSMOUTH SHERIFF'S DEPARTMENT
                                           OPINION BY
v.    Record No. 2667-98-1        JUDGE ROSEMARIE ANNUNZIATA
                                         SEPTEMBER 7, 1999
STEPHEN E. CLARK


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           William C. Walker (Donna White Kearney;
        Taylor & Walker, on brief), for appellant.

        James T. Martin (Lieberman & Martin, on
        brief), for appellee.


     The City of Portsmouth Sheriff's Department ("employer")

appeals the Workers' Compensation Commission's ("the

commission") determination that Stephen E. Clark ("claimant") is

entitled to benefits under the Workers' Compensation Act

("Act").  Employer contends the commission erred in holding that

employer failed to rebut the statutory presumption of Code

§ 65.2-402(B) that claimant's heart condition is an occupational

disease covered by the Act.  We find no error and affirm.

                              I.

                          BACKGROUND

     Claimant filed two claims seeking payment of medical

benefits and temporary total disability benefits from employer

for a heart condition, orthostatic hypotension, allegedly

arising out of his employment as a deputy sheriff. Claimant's evidence consisted of medical records produced over a span of more than three years by a number of treating physicians and claimant's testimony concerning his physical condition and his efforts to find employment since December 1996. None of claimant's physicians, either orally or by deposition, testified as to the cause of his orthostatic hypotension.

On November 10, 1998, the commission ruled that employer's evidence failed to rebut the statutory presumption that claimant's condition is an occupational disease covered by the Act. Finding the presumption intact, the commission awarded claimant medical benefits.

Based on the record before us, we find no error in the commission's determination that employer failed to rebut the presumption of Code § 65.2-402(B).

The record reveals the following relevant facts. In 1986, claimant began working as a deputy sheriff for employer. On May 27, 1994, at the age of fifty-one, claimant was hospitalized for symptoms that arose while he was driving a patrol car. According to an emergency room medical report, claimant felt a burning and tingling sensation develop along the right side of his chest, right arm, and neck. Claimant also felt nauseated and weak in his right extremities and was unable to lift his

- 2 -

right arm.  Claimant denied "any headache, visual disturbance, or hearing changes."

Upon admission to the emergency room, claimant reported he smoked one pack of cigarettes per day and had been smoking for the past thirty-five years.  Claimant further reported his mother and a daughter had diabetes and reported a "strong history of strokes at a young age" in members of his family, including his mother and father.  Dr. Warren Falo, the attending physician, noted that claimant's family history was "significant for strokes on both . . . his maternal and paternal sides."  Dr. A.J. Barot, a neurologist, was consulted while claimant was hospitalized and noted the following risk factors:  history of smoking, high cholesterol, and a family history of strokes at a young age.

Claimant was initially diagnosed with a cerebrovascular accident ("CVA").  Upon his discharge from the hospital two days later, claimant was also diagnosed as having suffered a transient ischemic attack ("TIA").  Over the next several months, claimant continued to receive treatment from various physicians, eventually recovering from this incident with no residual effect on his right extremities.

On June 16, 1994, Dr. Philip Goldstein met with claimant for a cardiovascular consultation.  At that time, claimant reported that he had a history of "blackout spells."  In his

report, Dr. Goldstein wrote: "As the last blackout spell was a year ago, the history is limited. From what [claimant] can recall he has them only while at work. He describes his job as very stressful. He said that they usually occur while in the car driving." Claimant denied "diabetes, hypertension, family history of coronary disease, and hypercholesterolemia." Dr. Goldstein listed claimant's history of smoking as the only risk factor for coronary disease.

In December 1994, Moira Horne, a Trigon claims representative, posed several questions by letter to Dr. Barot regarding claimant's health condition in conjunction with a workers' compensation claim. By handwritten response, Dr. Barot indicated that claimant had been diagnosed with a CVA and a TIA and that claimant had a family history risk factor.

During a cardiovascular re-evaluation on November 9, 1995, claimant reported that he had been having blackouts three or four times per year since 1982, four years before claimant started working for employer. According to claimant's description, the blackouts caused him to have shortness of breath, nausea, double vision, and blurred vision immediately prior to passing out. After lying down for a few minutes, the episode would resolve itself, although persistent nausea and weakness might follow for some time thereafter. Dr. Skillen, the treating physician, described these blackouts as "syncopal

- 4 -

episodes."  As a result of his examination, Dr. Skillen recommended a test, called a tilt table study, which returned "markedly abnormal" results.  Performed on November 29, 1995, the test was "positive for orthostatic hypotension."

Claimant was again hospitalized on December 9, 1996, after developing numbness, tingling, and weakness in the left upper extremity.  Claimant did not report any dizziness, "fainty feeling," or obstruction in vision.  Upon his admission, claimant admitted to smoking a pack of cigarettes per day.  Dr. Leonard Davis, the attending physician, noted that claimant's mother had died of heart disease but, following an examination on December 10, 1996, Dr. Barot noted that claimant's family history was "noncontributory" to his condition.

In February 1997, Dr. Eric Freeman, a physician with Portsmouth Pulmonary Associates, examined claimant upon referral.  Claimant reported a shortness of breath that had become "much worse in the last three or four months" and a significant cough that was producing a thick, clear mucous.  After his examination, Dr. Freeman reported:

> Assessment:  History of long term cigarette
> smoking, coughing, mucous production on a
> daily basis as well as increasing shortness
> of breath documented objectively with
> Pulmonary Function Tests plus the physical
> finding of wheezing all indicate a diagnosis
> of chronic obstructive pulmonary disease
> with an acute exacerbation.  He also has
> peripheral vascular disease with a stroke.

> PLANS AND SUGGESTIONS:  Cessation of
> cigarette smoking is the key to this patient
> improving.  I asked the patient to no longer
> smoke cigarettes, take NICOTINE patch as
> soon as possible, and he has agreed to do
> this.

In response to a letter from another Trigon claims representative dated May 29, 1997, Dr. Davis indicated that claimant suffered from a CVA and chronic obstructive pulmonary disease ("COPD"), that claimant's risk factor was smoking, and that claimant's job was not the cause of his condition.

On September 2, 1997, Dr. Goldstein wrote in an office memorandum:

> I suspect that [claimant] may have suffered
> a CVA in December of 1996 and by history and
> cath findings, a TIA in 1994 possibly on the
> basis of orthostatic hypotension which
> resulted in a low flow state to the brain
> which resulted in clotting of blood and
> leading to cerebral infarction. . . .
> [Claimant] does have a cardiovascular
> problem.  It is documented orthostatic
> hypotension and I believe did result in a
> right cerebral infarct per Dr. Barot his
> neurologist and this, I feel, could be
> explained on this basis from a low flow
> state to the brain precipitated by the same.

On September 9, 1997, Dr. William E. Callaghan, one of Dr. Goldstein's associates, examined claimant following another episode of weakness.  Callaghan noted that claimant smoked, which was the only risk factor for heart disease recorded by the physician.

II.

ANALYSIS

The Workers' Compensation Act provides for coverage of occupational diseases arising out of and in the course of employment.  See Code § 65.2-101; A New Leaf, Inc. v. Webb, 26 Va. App. 460, 465, 495 S.E.2d 510, 513 (1998), aff'd, 257 Va. 190, 511 S.E.2d 102 (1999).  Under Code § 65.2-402(B), a heart disease incurred by a deputy sheriff is "presumed to be [an] occupational disease[], suffered in the line of duty, that [is] covered by [the Act] unless such presumption is overcome by a preponderance of competent evidence to the contrary."  The Supreme Court of Virginia recently re-affirmed the principle that an employer may rebut the presumption of Code § 65.2-402(B) by proving by a preponderance of the evidence that:  1) the claimant's disease was not caused by his or her employment, and 2) there was a non-work-related cause of the disease.  See Bass v. City of Richmond Police Dep't, 258 Va. 103, 115, 515 S.E.2d 557, 563 (1999).  When the commission determines that an employer has failed to overcome the statutory presumption, the claimant is entitled to an award of benefits.  See Code §§ 65.2-400 to -407.

Employer contends that its evidence rebutted the presumption contained in Code § 65.2-402(B) by establishing that claimant's orthostatic hypotension was caused by his family

history of heart disease and his history of smoking and not by his employment. The commission, however, in its role as fact finder, found that employer's evidence failed to establish by a preponderance of the evidence a non-work-related cause of claimant's heart disease and that employer consequently failed to rebut the statutory presumption.[1] We cannot conclude as a

---

[1] The commission's decision stated in pertinent part:

> In order to rebut the presumption, it is not sufficient that the employer establish one or more non-employment risk factors commonly associated with heart disease. The employer must establish by competent medical evidence a non-work-related cause of the condition.
> We find that the medical evidence in this case does not preponderate to show a non-work-related cause for the claimant's heart disease and resulting strokes. Dr. Davis opined that the claimant's job was not the cause of his stroke. He did . . . not set forth a non-work-related cause. He also stated that the claimant's smoking was a risk factor. Dr. Barot's statement that the claimant's risk factors include smoking, high cholesterol, and "a family history of strokes at a young age" is not firmly supported b the medical records from the other physicians. The medical records as a whole, although somewhat inconsistent, do not establish a family history of heart disease. It appears that the claimant's mother's health problem was diabetes, which resulted in strokes. The father suffered from kidney disease. The Commission gives little weight to opinions based on an inaccurate or incomplete history.
> Neither Dr. Davis nor Dr. Barot offer an opinion that smoking or family history caused the claimant's heart disease. Also, they do not set forth any other

matter of law that the commission erred in its ruling.  See
County of Amherst Bd. of Supervisors v. Brockman, 224 Va. 391,
399, 297 S.E.2d 805, 809-10 (1982); Dep't of State Police v.
Talbert, 1 Va. App. 250, 255, 337 S.E.2d 307, 309 (1985).

## A.

### Family History

The weight to be given the evidence, the credibility of
witnesses, and the resolution of conflicting medical evidence
are matters solely for the commission to decide.  See Talbert, 1
Va. App. at 254, 337 S.E.2d at 309.  "[A] finding by the
Commission upon conflicting facts . . . is conclusive and
binding . . . , absent fraud, when such determination is
supported by competent, credible evidence."  C.D.S. Constr.
Servs. v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240
(1978).  See Talbert, 1 Va. App. at 253, 337 S.E.2d at 308 ("A
finding based upon conflicting expert medical opinions is one of
fact which cannot be disturbed . . . .").  "On review, we
determine whether the evidence was sufficient to support the
finding of fact reached by the Commission, not whether the
evidence was sufficient to have supported a contrary finding."
Id.

---

non-work-related cause.  Therefore, the
evidence is not sufficient to rebut the
presumption.

The medical records relied upon by employer contain conflicting evidence as to whether claimant has a family history of heart disease and the commission resolved the conflict, determining that, "as a whole, [they] do not establish a family history of heart disease."  Because this finding is supported by credible evidence, the commission's determination is binding on appeal.[2]

Furthermore, even had the medical records established a family history of heart disease, employer failed to prove by a preponderance of the evidence that this risk factor actually caused claimant's orthostatic hypotension.  "[T]he showing of 'risk factors' alone does not rebut the statutory presumption and does not establish competent medical evidence of a non-work-related cause of the disabling disease."  City of Norfolk v. Lillard, 15 Va. App. 424, 429, 424 S.E.2d 243, 246 (1992).  Employer's proof that a family history of heart disease caused claimant to develop orthostatic hypotension consists

_____

[2] According to the record, although claimant denied a family history of "coronary disease" on one occasion, he admitted on another occasion that his mother had died of heart disease. Moreover, although several physicians, including Dr. Barot, reported that claimant had a family history for strokes and CVA after his first CVA in 1994, following claimant's second CVA in 1996, Dr. Barot reported that claimant's family history was "noncontributory" to his condition.  Also, upon separate examinations of claimant, Drs. Goldstein and Callaghan, both cardiologists, only reported claimant's history of smoking as a risk factor for coronary disease, supporting the inference that family history was not a causative risk factor.

exclusively of references in medical reports noting that claimant has a family history risk factor.  Such references do not constitute evidence that claimant's orthostatic hypotension was, in fact, of genetic or inherited origin, in whole or in part.  See id. Cf. Augusta County Sheriff's Dep't v. Overbey, 254 Va. 522, 525, 527, 492 S.E.2d 631, 633, 634 (1997) (finding that employer established a non-work-related cause of claimant's heart disease based in part on the uncontradicted deposition testimony of the attending physician that several non-work-related risk factors "caused" the claimant's heart disease).

## B.

## HISTORY OF SMOKING

Employer also failed to present evidence of the relationship between claimant's history of smoking and his heart disease sufficient to rebut the presumption of Code § 65.2-402(B).

The record establishes that claimant smoked cigarettes for over thirty-five years.  On multiple occasions since 1992, claimant admitted smoking one pack of cigarettes per day.  Over a period of three years, Drs. Barot, Goldstein, Davis, and Callaghan identified claimant's history of smoking as a risk factor.  Drs. Goldstein and Callaghan, both cardiologists,

specifically reported that claimant's history of smoking put him at risk for the development of coronary disease.

No evidence was admitted, however, concerning the actual effect of claimant's smoking on his cardiovascular health. No physician opined that smoking caused claimant's orthostatic hypotension. Cf. id. Although Dr. Freeman recommended that claimant stop smoking after diagnosing claimant with COPD, his recommendation does not constitute evidence of the cause of claimant's orthostatic hypotension. In his assessment of claimant's health, Dr. Freeman diagnosed claimant with COPD and noted that claimant also has a "peripheral vascular disease with a stroke." Nothing in Dr. Freeman's report suggests he considered the relationship between claimant's vascular disease and history of smoking. Indeed, the plain language of the report indicates that Dr. Freeman, a pulmonary specialist, considered claimant's history of smoking only as a factor contributing to his diagnosis of COPD. Dr. Freeman did not diagnose claimant with orthostatic hypotension and was not consulted to treat this condition. Thus, although employer may have established that claimant's history of smoking was a risk factor for heart disease, employer failed to present sufficient medical evidence that claimant's smoking habits actually caused orthostatic hypotension. See Lillard, 15 Va. App. at 429, 424 S.E.2d at 246.

To rebut the presumption of Code § 65.2-402(B), employer was required to produce affirmative evidence of a non-work-related cause of claimant's orthostatic hypotension. See Bass, 258 Va. at 115, 515 S.E.2d at 563. Because employer's evidence did not prove by a preponderance of the evidence that claimant's family history or history of smoking caused him to develop orthostatic hypotension, the commission did not err by finding that employer failed to rebut the statutory presumption that claimant's condition is a compensable occupational disease. See Lillard, 15 Va. App. at 426, 424 S.E.2d at 245 ("In the absence of competent evidence to the contrary, the statutory presumption controls and the claimant prevails.").

For the foregoing reasons, we affirm the commission's award.

Affirmed.