COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Senior Judge Coleman[*]
Argued at Richmond, Virginia


JAMES ISAAC MEDLIN, JR.

v.   Record No. 1047-00-2

COUNTY OF HENRICO POLICE                        OPINION BY
                                        JUDGE ROSEMARIE ANNUNZIATA
STEPHEN DOUGLAS VASS                        FEBRUARY 27, 2001

v.   Record No. 1048-00-2

COUNTY OF HENRICO POLICE


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Malcolm Parks (Maloney, Parks, Clarke &
                Nathanson, P.C., on briefs), for appellants.

                Ralph L. Whitt, Jr. (John T. Cornett, Jr.;
                Williams, Lynch & Whitt, on briefs), for
                appellee.


        Appellants, James Isaac Medlin, Jr. and Stephen Douglas

Vass, Henrico County police officers, were diagnosed with heart

disease and filed for workers' compensation benefits.  Following

separate hearings, each was awarded compensation.  The employer

appealed to the full commission and the full commission reversed

both awards of the deputy commissioner and denied Medlin's and

Vass' claims.  Medlin and Vass contend the full commission erred

---

        [*] Judge Coleman participated in the hearing and decision of
this case prior to the effective date of his retirement on
December 31, 2000 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401.

in finding that the employer had carried its burden of proving in each case, by a preponderance of the evidence, that Medlin's and Vass' work was not a proximate cause of their heart disease.[1]

The employer responds that the commission properly found the employer rebutted the Code § 65.2-402 presumption and that Medlin and Vass both failed to prove, "by clear and convincing evidence," that their heart disease arose out of and in the course of their employment.  See Code § 65.2-401.

For the following reasons, we reverse and remand both cases.

I.

BACKGROUND

Medlin v. County of Henrico Police

Medlin, age fifty-three, began work as a police officer for the County of Henrico on October 30, 1974 and continued to be employed in that position at all times relevant to this case.

---

[1] Medlin and Vass each particularize their claim of evidentiary insufficiency, contending the commission erred:  (1) in finding that because certain medical witnesses testified that Medlin's and Vass' employment contributed to the "development, acceleration, or aggravation" of their disease, that Medlin's and Vass' heart disease pre-existed their employment; (2) in interpreting a physician's "inability to exclude work" as a causal factor to mean that this statement implied nothing more than a lack of knowledge or an admission that Medlin's and Vass' work was only a "possible" cause of their disease; (3) in discrediting the testimony of a medical expert on the basis that he used the term "risk factor" rather than "cause"; and (4) in focusing on "semantics" rather than rendering a plain and fair interpretation of the evidence.  Because we reverse both cases on more general grounds, we decline to address each claimed

As required by his employer, he underwent a physical examination in 1976.  At that time Medlin was found to be free of heart disease and hypertension.

In the course of his twenty-four-year career as a law enforcement officer with the County, Medlin held "street duty" positions for nineteen of those years and had administrative assignments for the remaining five years.  Medlin described the numerous physically demanding and dangerous activities that his job required, and stated that he found these activities to be stressful.[2]

On May 2, 1997, Medlin consulted his family physician, Dr. Donald B. Longest, after experiencing some chest "tightness" and shortness of breath while taking a walk.  Dr. Longest ordered a cardiac stress test and referred Medlin to a cardiologist.  Significant coronary artery blockages were found, and Medlin underwent three-vessel coronary artery bypass grafting on May 5, 1997.  Medlin was incapacitated from work from May 2, 1997 until he was cleared to resume his police work on January 21, 1998.

One of Medlin's treating cardiologists, Dr. Robert M. Bennett, noted after his initial consultation with Medlin that he had several "cardiac risk factors," including high

error except those requiring resolution on remand.

[2] Examples of the activities that Medlin found to be stressful included chasing suspects, extracting people from auto crashes, dealing with hostage situations, enduring gunfire, taking the life of a suspect, and having officers under his supervision die in the line of duty.

cholesterol, hypertension, and a family history which included a father who had died of a heart attack at age forty-one or forty-two, a brother who had bypass surgery at age forty-six, and a mother who had bypass surgery at age seventy-nine. Dr. Bennett and Dr. Bradford Matthews, another one of Medlin's treating cardiologists, answered interrogatory-type questions in which they indicated that they could not exclude Medlin's work-related stress "as a contributing factor in the development, acceleration and/or aggravation" of his heart disease. Both doctors concluded that Medlin's heart disease was "multi-factorial" and that it was "more probable than not" that Medlin's employment contributed in some degree to his disease.

Cardiologist Dr. Richard A. Schwartz examined Medlin on January 8, 1998 and reviewed his medical records. Dr. Schwartz concluded that Medlin had several risk factors, including family history, high cholesterol and occupational stress, and that "it is more probable than not that Officer Medlin's work was a contributing factor in the development of his heart disease." Dr. Schwartz also submitted a supplemental report to which he appended a chapter in a medical textbook published in 1998, which linked stress to cardiovascular disease.

On December 3, 1997, Dr. Michael Hess examined Medlin at the request of the employer. Dr. Hess met briefly with Medlin but did not discuss with him the details of his employment. In

- 4 -

his deposition, Dr. Hess conceded that he knew nothing about the dangers or physical and emotional demands of Medlin's job. Rather, Dr. Hess concluded that, as a general matter, there is no link between stress and heart disease.  Specifically, he stated, "[t]here is no evidence in the literature that stress or work-related factors play any primary cause in the development of coronary artery disease.  Further there is absolutely no evidence that employment as a police officer is a factor in causing the coronary artery disease."  Dr. Hess admitted that he could not identify any authority that disproved the connection between law enforcement work and hypertension but, rather, based his opinion on what he perceived to be a lack of affirmative proof of a connection.  Dr. Hess concluded that Medlin's heart disease was caused by family history, high cholesterol, and hypertension.  However, he also stated that "emotional stress on the job can contribute to hypertension or aggravate hypertension."  Dr. Hess conceded that Medlin was free of heart disease and hypertension when he began his employment with the County and that Medlin's earliest elevated blood pressure measurement was taken in 1990.

Dr. Mark Bladergroen, who performed the bypass surgery on Medlin, answered the same interrogatory-type questions answered by Drs. Bennett and Matthews.  Dr. Bladergroen indicated that he could exclude Medlin's work as a contributory factor in his disease but then stated that the cause of Medlin's disease was

multi-factorial and that it was "unknown" whether it was more probable than not that the demands and stresses of Medlin's work as a police officer contributed to his heart disease.

## Vass v. County of Henrico Police

Vass, age fifty-one, began his employment as a police officer for Henrico County in 1974, and has worked in that capacity ever since. In 1976, Vass' employer required him to undergo a physical examination. He was found to be free of heart disease and hypertension at that time.

In the course of his career as a law enforcement officer for the County, Vass held a "uniform," or "front-line" position for the first eight years. During that period, he was concurrently assigned to the County's tactical squad, commonly known as the "SWAT" team. Since 1982, Vass has been assigned to the Investigative Section. Vass described numerous physically demanding and dangerous activities that his job required and stated that he found these activities to be stressful.[3]

In February, 1997, Vass experienced back pain and two episodes of shortness of breath. On February 11, 1997, he visited his family physician, Dr. Richard Overmeyer, who referred Vass to a cardiologist, Dr. Charles M. Zacharias. Dr.

---

[3] Examples of the activities that Vass found to be stressful included performing undercover work, being on-call round-the-clock, witnessing horrific crimes and death scenes, conveying news of persons' deaths to their families, chasing, detaining and disarming suspects, and being shot at.

Zacharias diagnosed Vass with coronary artery disease and performed a heart catheterization and coronary angioplasty. Vass returned to work on March 17, 1997.

Vass' medical records indicate that in February, 1997, he had several "risk factors," including high blood pressure, high cholesterol, a history of cigarette smoking, and heart disease suffered by two of his family members, an uncle and a cousin. Vass' family physician, Dr. Overmeyer, answered interrogatory-type questions in which he indicated that he could not exclude Vass' work-related stress "as a contributing factor in the development, acceleration and/or aggravation" of his heart disease. Dr. Overmeyer concluded that Vass' heart disease was "multi-factorial" and that it was "more probable than not" that Vass' employment contributed in some degree to his disease.

Vass' cardiologist, Dr. Zacharias, answered the same interrogatory-type questions answered by Dr. Overmeyer. Dr. Zacharias indicated that Vass' disease was "multifactorial" and that he could not exclude Vass' work as a contributing factor in his disease. However, Dr. Zacharias answered "no" to the question whether it was more probable than not that the demands and stresses of Vass' work as a police officer contributed to his heart disease.

Dr. Richard A. Schwartz reviewed Vass' medical records but did not examine Vass. Dr. Schwartz concluded that "it is probable that officer Vass' occupational risk factor was

contributory in that insofar as any risk factor is contributory to the development of coronary artery disease" and that "[Vass'] occupational stress can be considered a contributing factor."

Drs. Michael Hess and Stuart Seides reviewed Vass' medical records at the request of the employer but neither examined Vass. Both doctors concluded that, as a general matter, there is no link between stress and heart disease. Specifically, Dr. Hess stated in his deposition, "I do not believe that stress leads to the development of coronary artery disease," and he agreed with the statement that "there is no persuasive evidence that stress, in whatever form, contributes to the development of coronary artery disease." Dr. Seides stated in his deposition that "a person's occupation as a police officer . . . cannot in any reasonable way be linked with the development of coronary artery disease." Dr. Seides admitted that his opinion that Vass' work did not contribute to his disease was based on what Dr. Seides perceived to be a lack of affirmative proof of such a causal connection.

II.

ANALYSIS

A.

Code § 65.2-402 Presumption – Prima Facie Case

In this matter of first impression before the Virginia appellate courts, we address the question of whether testimony which only generally refutes the existence of a causal

relationship between work-related stress and heart disease rebuts the statutory presumption established under Code § 65.2-402(B).  We hold that testimony of this nature is not probative on the issue.

Code § 65.2-402(B) provides the following presumption in certain workers' compensation cases:

> Hypertension or heart disease causing the death of, or any health condition or impairment resulting in total or partial disability of [various specified law enforcement personnel] shall be presumed to be occupational diseases, suffered in the line of duty, that are covered by this title unless such presumption is overcome by a preponderance of competent evidence to the contrary.

The statute requires that in order for the presumption to apply, the employee must have undergone a pre-employment physical examination, if requested by the employer, and must have been found to be free of hypertension or heart disease at the time of that examination.  Code § 65.2-402(D).

Medlin proved that the presumption applied to him.  He was a member of the Henrico County Police Department at all times relevant to this claim.  Although Medlin began his employment with the County in 1974, he was not asked to undergo a physical examination until 1976.  At the time of the examination, he was found to be free of heart disease and hypertension.  Finally, Medlin was diagnosed with heart disease in May, 1998 and was also found to be suffering from hypertension at that time.

Likewise, Vass proved the presumption applied to him. Vass has been employed by the Henrico County Police Department since 1974. In 1976, he was found to be free of heart disease and hypertension following a physical examination conducted at the direction of his employer. Finally, Vass was diagnosed with hypertension and heart disease in February, 1997.

After the claimant establishes that he is entitled to the presumption, the burden shifts to the employer to refute the presumption. Fairfax County Fire and Rescue Dept. v. Mitchell, 14 Va. App. 1033, 1035, 421 S.E.2d 668, 670 (1992). The employer must prove, by a preponderance of the evidence, two factors: (1) a non-work-related cause for the heart disease; and (2) that work was not a cause of the claimant's heart disease. Bass v. City of Richmond Police Dept., 258 Va. 103, 112-13, 515 S.E.2d 557, 561-62 (1999).

Medlin conceded that, in addition to work-related causes, there were non-work-related causes that contributed to his heart disease. Vass likewise conceded that both work-related and non-work-related causes contributed to his heart disease. Therefore, because a non-work-related cause was established, the remaining question is whether the employer proved, by a preponderance of competent evidence, that the work that Medlin and Vass performed as police officers did not contribute to their heart disease.

In finding that the employer had proved Medlin's work was not a cause of his heart disease, the commission relied, in part, on the testimony of Dr. Hess. Dr. Hess concluded that, as a general matter, occupational stress does not cause heart disease. In Vass' case, the commission relied, in part, on the testimonies of Drs. Hess and Seides in finding the employer had proved Vass' work was not a cause of his heart disease. Both doctors testified that, as a general matter, occupational stress is not linked to the development of heart disease. We find that because of the legislatively created presumption to the contrary, Dr. Hess' and Dr. Seides' opinions regarding the relationship between occupational stress and heart disease were of no probative value to the issues in these cases. See Page v. City of Richmond, 218 Va. 844, 847, 241 S.E.2d 775, 777 (1978).[4]

Code § 65.2-402 "has long been recognized as a remedial statute, enacted by the legislature to overcome the difficulty

---

[4] In Page the Supreme Court held:

> [T]he doctor not only failed to give his opinion as to the cause of [the employee's] disabling disease, but he also failed to state affirmatively that the evidence disproved any causal connection between the disease and [the employee's] occupation as a fire fighter. [The employer's doctor] merely reported that he had found no evidence of such a connection. We hold that this evidence is insufficient to rebut the statutory presumption upon which [the employee] was entitled to rely.

Page, 218 Va. at 847, 241 S.E.2d at 777.

that a [police officer] would otherwise have in proving causation." City of Norfolk v. Lillard, 15 Va. App. 424, 430, 424 S.E.2d 243, 247 (1992). In enacting the statute, "[t]he legislature knew that the causes of . . . cardiac diseases are unknown and that the medical community is split regarding the impact of stress and work environment on these diseases." Fairfax County Fire and Rescue Services v. Newman, 222 Va. 535, 540, 281 S.E.2d 897, 900 (1981); see also Stephens v. Workmen's Compensation Appeals Board, 20 Cal. App. 3d 461, 465 (Cal. Ct. App. 1971); Robertson v. North Dakota Workers' Compensation Bureau, 616 N.W.2d 844, 854 (N.D. 2000); Sperbeck v. Dept. of Industry, Labor & Human Relations, 174 N.W.2d 546, 548 (Wis. 1970). By enacting the statutory presumption, the General Assembly resolved the split in medical opinions in favor of the employee and adopted the presumption that the stress of working as a law enforcement officer causes or contributes to the development of heart disease. See Stephens, 20 Cal. App. 3d at 465; Linnell v. City of St. Louis Park, 305 N.W.2d 599, 601 (Minn. 1981); Cunningham v. City of Manchester Fire Dept., 525 A.2d 714, 718 (N.H. 1987); Robertson, 616 N.W.2d at 854. Testimony which merely refutes the premise of such a legislatively enacted presumption does not constitute proper evidence in rebuttal. Where the General Assembly has concluded that there is a causal link between stress and heart disease, it is not for the commission or the courts to reconsider the issue,

for to do so would defeat the intentions of the legislature.  It thus follows that, "[i]t is impermissible for the [commission] to accept the opinion of a physician so disposed as the basis for disallowing a claim."  Stephens, 20 Cal. App. 3d at 467; Swanson v. City of St. Paul, 526 N.W.2d 366, 368 (Minn. 1995); Cunningham, 525 A.2d at 718; Robertson, 616 N.W.2d at 854.  Stated otherwise, the employer may not, in effect, "repeal" the statute "by seeking out a doctor whose beliefs preclude its possible application."  Stephens, 20 Cal. App. 3d at 467; see also Linnell, 305 N.W.2d at 601; Sperbeck, 174 N.W.2d at 289.  In Sperbeck, the court noted that "[e]vidence which only attacks the rationale of the statute . . . does nothing more than question the wisdom of the legislature."  Sperbeck, 174 N.W.2d at 289.  If the majority of the medical community concludes there is no link between stress and heart disease, the employer's remedy is to go back to the General Assembly.  Sperbeck, 174 N.W.2d at 289.  We, accordingly, hold that evidence that merely rebuts generally the underlying premise of the statute, which establishes a causal link between stress and heart disease, is not probative evidence for purposes of overcoming the presumption.[5]  The commission therefore erred when

---

[5] The employer argues that if we find no probative value in this type of evidence, then the presumption will be irrebuttable.  We disagree.  Although irrebuttable presumptions are unconstitutional, Newman, 222 Va. at 540, 281 S.E.2d at 900, the employer can rebut the Code § 65.2-402 presumption without attacking the underlying legitimacy of the presumption itself.  See, e.g., Stephens, 20 Cal. App. 3d at 468; Linnell, 305 N.W.2d

it relied, in part, on the testimonies of Dr. Hess and Dr. Seides, which did no more than refute the conclusion of the Virginia General Assembly.

Because the weight the commission assigned to Dr. Hess' and Dr. Seides' opinions in reaching its decisions is unclear, we remand both cases to the commission to determine whether the employer has sufficiently rebutted the presumption in light of the remaining probative evidence in these cases.  See Virginia Dept. of State Police v. Talbert, 1 Va. App. 250, 253, 337 S.E.2d 307, 308 (1985) ("We do not review the weight or preponderance of the evidence nor the credibility of the witnesses, except to consider whether there exists sufficient credible evidence to sustain the findings.").

B.

Remaining Issues

Because two issues will likely arise again on remand, we will address them here.  Both Medlin and Vass contend the commission erred, as a matter of law, in discrediting Dr. Schwartz's opinion because he used the term "risk factor" instead of "cause."

In determining the appropriate weight to assign Dr. Schwartz's opinion in both cases, the commission cited our decision in City of Portsmouth Sheriff's Dept. v. Clark, 30 Va.

---

at 601; Worden v. County of Houston, 356 N.W.2d 693, 695 (Minn. 1984).

App. 545, 518 S.E.2d 342 (1999). In Portsmouth, we held that proof of a "risk factor" alone does not establish a non-work-related cause for a claimant's heart disease. Portsmouth, 30 Va. App. at 554, 518 S.E.2d at 346. We found that the employer in that case had failed to prove that the claimant's family history risk factor actually caused his disease. Id.

Medlin contends the commission misapprehended Dr. Schwartz's use of the term "risk factor." He argues Dr. Schwartz considered risk factors to be the causative factors of Medlin's disease. We disagree.

We cannot say, as a matter of law, that Dr. Schwartz's report clearly establishes his intent to equate the two terms, or that he gave a clearly-stated opinion that Medlin's occupational stress was a risk factor that, in fact, caused his heart disease.[6] Dr. Schwartz states, as a general proposition,

---

[6] In his report, Dr. Schwartz stated:

> Mr. Medlin's coronary artery disease is clearly multifactorial. Included in these factors is occupational stress, in this case, police work. . . . There is no way to exclude work-related stress as a risk factor in the development of coronary artery disease nor is there any way of including or eliminating any other risk factor. These are correlative findings. It is more probable than not that Officer Medlin's work was a contributing factor in the development of his heart disease insofar as any risk factors, including family history, cigarette

that no risk factor may be excluded in the development of coronary artery disease and that they are all correlative.[7] However, he does not opine which if any of the risk factors was causally related to Medlin's disease.  See Portsmouth, 30 Va. App. at 554, 518 S.E.2d at 346.  Furthermore, although he states that Medlin's work "is more probable than not . . . a contributing factor in the development of his heart disease," the import of the opinion is ambiguous given his caveat that it applies only "insofar as any risk factors . . . can be considered as contributory factors . . . ."  When Dr. Schwartz's opinion is viewed in relation to the testimony given by Dr. Hess, we cannot

---

> smoking, hypertension, etc., can be considered as contributory factors. . . .  All risk factors, including occupational stress, are correlative.

[7] Dr. Schwartz's use of the term "correlative" is ambiguous and does not compel a finding that he used the term "risk factor" interchangeably with the term "cause."  The terms "correlate," "correlated," and "correlative" have various meanings.  For example, "correlate" may mean:  "either of two things so related that one directly implies or is complementary to the other," "to bear reciprocal or mutual relations," or "relate as necessary or invariable accompaniments with or without the implication of causality."  Webster's Third New International Dictionary 511 (1993) (emphasis added).  "Correlated" may mean:  "closely, systematically, or reciprocally related," or "related as a universal accompaniment whether causally connected or not."  Id. (emphasis added).  Finally, the term "correlative" could mean "naturally related," or "having, indicating, or involving a reciprocal relation."  Id.  Thus, use of the term "correlative," itself, does not necessarily indicate a causal relationship between two items.  Furthermore, in using the term "correlative," Dr. Schwartz does not indicate whether he is referring to the relationship between various risk factors or to the relationship between a given risk factor and Medlin's heart disease.

conclude that the commission erred in giving Dr. Schwartz's opinion less weight. Dr. Hess stated that there were three risk factors in Medlin's case that actually "caused" his disease: his family history, hypertension and high cholesterol. The resolution of the factual dispute which the two conflicting opinions gave rise to was within the province of the commission. See Metro Machine Corp. v. Lamb, 33 Va. App. 187, 195, 532 S.E.2d 337, 340 (2000) ("[T]he resolution of medical opinion is a question of fact."); Ogden Aviation Services v. Saghy, 32 Va. App. 89, 101, 526 S.E.2d 756, 762 (2000); Dollar General Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996) ("We will not substitute our judgment for that of the trier of fact . . . .").

In Vass' case, however, we find that the commission erred in its application of our holding in Portsmouth. Contrary to the commission's conclusion that "Dr. Schwartz speaks only of 'risk factors,'" the record shows that in Vass' case, Dr. Schwartz opined that Vass' occupational stress was a risk factor that "can be considered a contributing factor" in the development of his disability.[8] Because it erroneously applied

---

[8] In one report Dr. Schwartz stated:

> Precise etiologic cause of coronary artery disease is not known. It is a multifactorial process that has associated with it certain well known risk factors. One of these risk factors is clearly occupational stress and the duties of a police officer would certainly fulfill that criteria.

our holding in Portsmouth, the commission did not consider what weight, if any, it would accord Dr. Schwartz's opinion, as it is required to do. Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991) ("Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing."). On remand, the commission will have to reconsider Dr. Schwartz's opinion, together with all the remaining evidence in this case, in light of this holding.

Medlin next contends the commission erred, as a matter of law, in concluding that because Drs. Bennett and Matthews stated that Medlin's work was a contributing factor in "the development, acceleration and/or aggravation" of Medlin's heart

---

> Importantly, the effect of various risk factors cannot be apportioned among them when multiple factors exist. Therefore, it is probable that officer Vass' occupational risk factor was contributory in that insofar as any risk factor is contributory to the development of coronary artery disease. . . . [O]n the other hand the way in which risk factors operate is still open to debate.

In a second report Dr. Schwartz stated:

> [M]ore probably than not, Mr. Vass' occupation as a law enforcement officer was a risk factor. As in the case of other risk factors, there is a correlative "cause" in the development of heart disease. <u>Finally, insofar as his heart disease was a cause of Mr. Vass' temporary disability from employment, his occupational stress can be considered a contributing factor</u>.

(Emphasis added).

disease, that the disease must have pre-existed his employment. Vass makes the same contention with respect to the commission's treatment of Dr. Overmeyer's opinion. We agree with both Medlin and Vass.

In both opinions, the commission cited Ashland Oil Co. v. Bean, 225 Va. 1, 300 S.E.2d 739 (1983), for the proposition that "[i]f work merely aggravates a disease, then the disease must have pre-existed the employment. Work, then, could not have been the originating cause of the disease, and the aggravation would not be compensable as an occupational disease." While the Virginia Supreme Court held in Ashland Oil that an employee cannot recover "for aggravation of ordinary diseases of life," id. at 3, 300 S.E.2d at 740, the evidence in that case showed that the employee had a bunion before she began working and that her job merely aggravated the pre-existing condition. Id. at 2, 300 S.E.2d at 739. The Court concluded that "it was not an occupational disease, and only disabilities resulting from occupational diseases are compensable." Id. at 3, 300 S.E.2d at 740.

Here, the uncontroverted evidence showed that Medlin and Vass began their employment in 1974 and were found to be free of heart disease and hypertension in 1976, following a physical examination conducted at the direction of the County. Therefore, Medlin's and Vass' conditions did not pre-exist their employment. In addition, the Code § 65.2-402 presumption

provides that if the employee can prove he was free of heart disease or hypertension at the beginning of his employment, his disease will be presumed to be an occupational disease. Therefore, we find the commission erred, as a matter of law, in misinterpreting Ashland Oil, and in concluding that Medlin's and Vass' disease pre-existed their employment.

Because we find the commission improperly considered Dr. Hess' and Dr. Seides' opinions in reaching its decisions, we remand both cases to the commission for reconsideration of the remaining evidence.[9]

Reversed and remanded.

---

[9] Because we remand for reconsideration of the issue of whether the employer rebutted the Code § 65.2-402 presumption, we need not consider the employer's contention that Medlin and Vass failed to establish an ordinary disease of life claim. Cf. Augusta County Sheriff's Dept. v. Overbey, 254 Va. 522, 527, 492 S.E.2d 631, 634 (1997) (if employer rebuts presumption, burden shifts to employee to "'establish[] by clear and convincing evidence, to a reasonable medical certainty,' that his heart disease arose out of and in the course of his employment" (quoting Code § 65.2-401 (amended 1997))).