COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Kelsey and Alston
Argued at Richmond, Virginia


DAVID MICHAEL ROBINSON WOODS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1355-11-2                      JUDGE ROSSIE D. ALSTON, JR.
                                                           FEBRUARY 14, 2012
HENRICO (COUNTY OF) DIVISION OF FIRE


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Gregory S. Hooe (Marks & Harrison, P.C., on brief), for appellant.

              Ralph L. Whitt, Jr. (Corey R. Pollard; Whitt & Del Bueno, PC, on
              brief), for appellee.


        David Woods (claimant) appeals a decision of the Workers' Compensation Commission

(the commission) denying his claim for benefits for hypertrophic cardiomyopathy (HCM), which

he alleged was a result of his employment with Henrico County Division of Fire (employer).

Claimant asserts that the commission erred in finding that employer rebutted the presumption set

forth in Code § 65.2-402, which resulted in the denial of benefits.  Additionally, claimant

contends that the commission erred in holding that claimant is not entitled to indemnity benefits

based on its finding that he failed to market his residual capacity.  Claimant conceded at oral

argument that this second assignment of error would be moot if we agreed with the commission

on the first assignment of error.  For the reasons that follow, we affirm the commission's

decision on the first assignment of error, thereby rendering claimant's second assignment of error

moot.

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

In January 1989, claimant began working for employer as a firefighter. Prior to his first work day, claimant underwent a pre-employment physical which revealed no heart problems or hypertension. During the course of his twenty years of employment, claimant eventually reached the rank of lieutenant. Claimant also became the team leader for the technical rescue team and a fire instructor for the County of Henrico. On two separate occasions in July and September 2007, claimant experienced episodes of extreme fatigue, general weakness, an increased heart rate, and elevated blood pressure while performing his job duties. On both of these occasions, he was treated at Henrico Doctors' Hospital-Forest Campus. Claimant was in his early fifties when these episodes occurred.

Claimant subsequently sought treatment with Dr. Minh Bui, a cardiologist who ordered tests for claimant following the episode in September 2007. Dr. Bui removed claimant from his general work responsibilities beginning in September 2007 and restricted claimant to light-duty work until claimant retired on January 4, 2009. Claimant underwent an echocardiogram on September 26, 2007, and saw Dr. Bui for an office visit the next day. Dr. Bui read the echocardiogram along with claimant's medical records from the hospital, which indicated that he had a heart murmur. Dr. Bui diagnosed claimant with obstructive hypertrophic cardiomyopathy

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

(HOCM),[2] noting that claimant's medical history included hypertensive cardiovascular disease[3] and hypercholesterolemia.

Dr. Bui continued to treat claimant with medications and corresponded with employer in 2007 and 2008 to update employer on claimant's condition. On June 12, 2008, Dr. Bui responded to a questionnaire from employer. In this questionnaire, Dr. Bui indicated that claimant's HOCM was hereditary and likely caused by mutation in one of a number of genes. Additionally, Dr. Bui stated that claimant's work neither caused nor contributed to the HOCM. During an office visit on July 24, 2008, Dr. Bui wrote in his notes that he could not conclude that there was a causal link between claimant's hypertension and his HOCM, especially because claimant's condition involved obstruction not usually seen in patients with long-term hypertension and HCM. In August 2008, Dr. Bui signed documentation from the Virginia Retirement System, confirming that claimant was permanently disabled from performing the duties of a firefighter. Claimant remained on light-duty or paid vacation until his retirement became effective on January 4, 2009. At the time of his retirement, claimant's annual salary was $63,000.

In October 2008, claimant consulted with an independent medical examiner, Dr. Stanley Tucker. Dr. Tucker conducted an echocardiogram in his office and ordered genetic testing for claimant. He also examined claimant's medical records. The genetic testing was negative for certain gene mutations known to cause HOCM; however, the report from the test also stated that the negative result was inconclusive and did not rule out a diagnosis of HOCM. It noted that other gene regions not tested are known to contain gene mutations which cause the disease.

_____

[2] The record indicated that HOCM is a specific type of HCM and a type that Dr. Bui asserted is usually genetic or congenital.

[3] Claimant and employer agreed that claimant's hypertensive cardiovascular disease, or "hypertension," was a compensable occupational disease. The parties dispute only whether claimant's HCM was a compensable occupational disease or a hereditary condition.

Additionally, the report noted that the particular genetic test performed would not identify the gene mutations of approximately forty percent of patients with a high clinical suspicion for HOCM.

Dr. Tucker concluded from this test, the echocardiogram, and claimant's medical records that claimant suffered from a different type of HCM, hypertensive hypertrophic cardiomyopathy (HHCM), not of a congenital variety. Dr. Tucker opined that claimant's HHCM resulted from the stress of firefighting that caused long-standing hypertension, which in turn caused the HHCM. Dr. Tucker testified that neither the echocardiogram nor the genetic testing indicated that claimant's condition was genetic. On cross-examination, Dr. Tucker conceded that he was unaware that claimant had a heart murmur but agreed that heart murmurs are consistent with HOCM. Dr. Tucker also admitted that the difference in the pressure gradient from the echocardiogram he conducted in October 2008 and the one Dr. Bui conducted in September 2007 could have resulted from Dr. Bui's treatment of claimant.

Dr. Bui declined to change his diagnosis when confronted with Dr. Tucker's conclusions. Dr. Bui stated that the genetic testing Dr. Tucker ordered only examined one of ten known gene regions that cause HOCM. Additionally, Dr. Bui identified two objective indicators from the echocardiogram to support his diagnosis of HOCM as opposed to HHCM. First, the echocardiogram indicated the presence of the pressure gradient, which is more consistent with HOCM than HHCM. Moreover, according to Dr. Bui, claimant's echocardiogram also showed systolic anterior motion (SAM) of the mitral valve in the heart, which causes obstruction of blood flow. Both of these, Dr. Bui confirmed, were more consistent with a diagnosis of HOCM than a diagnosis of HHCM. On cross-examination, Dr. Bui agreed that hypertension aggravates HOCM, but maintained that he had always believed that claimant suffers from two separate medical conditions: hypertension and HOCM.

On April 7, 2010, the deputy commissioner held an evidentiary hearing. Claimant testified about his medical history as described above. Claimant and employer agreed that claimant's hypertension, by itself, was a compensable occupational disease under Code § 65.2-402. The parties submitted Dr. Bui's and Dr. Tucker's depositions along with claimant's medical records.

Specific to his marketing efforts, claimant testified that he had no specialized job skills other than the ones he acquired during his time as a firefighter. While still working for employer and restricted to light-duty work, claimant made various requests for light-duty work, but none was provided. It was also revealed that employer's regulations prohibited claimant from seeking other employment without employer's permission. Clamant testified that he discussed the possibility of other work with his supervisors, but they advised him to maintain the status quo. Because clamant did not receive permission to seek other employment, he made no other marketing efforts prior to his retirement in January 2009.

Claimant understood that because of his condition he could not work on ladders, needed to avoid exposure to extreme environmental conditions such as high heat and extreme cold, and could not have a job that required more than very limited physical exertion. In late February or early March 2009, claimant obtained a part-time job with Emergency Training Systems (ETS) teaching emergency medical services and first aid. In 2009, claimant earned $8,795.80 from his work with ETS. Claimant further testified that he sought employment opportunities with the Virginia Employment Commission post-retirement, but at the hearing before the deputy commissioner, he was prohibited from introducing any evidence about his efforts because his counsel did not provide that information in discovery upon employer's request. Similarly, claimant testified that he had sought other job opportunities since being employed with ETS but could not elaborate on these efforts because of the discovery issue.

On the issue of compensability, the deputy commissioner found that employer had failed to overcome the compensable occupational disease presumption under Code § 65.2-402, pointing to perceived inconsistencies in Dr. Bui's responses to employer's questionnaires about claimant's HCM. Consequently, the deputy commissioner concluded that employer had not met its burden to establish a non-work-related cause of claimant's HCM.

On the issue of marketing, the deputy commissioner held that claimant failed to establish adequate marketing such that his earnings from ETS did not accurately reflect his earning capacity.

On review, the commission reversed on the compensability issue but affirmed on the marketing issue. With regard to the compensability issue, the commission held that employer had established by a preponderance of the evidence a non-work-related, genetic cause for claimant's HCM.

This appeal followed.

ANALYSIS

A. Presumption of Occupational Illness under Code § 65.2-402

Code § 65.2-402(B) provides, in relevant part:

> Hypertension or heart disease . . . or any health condition or impairment resulting in total or partial disability of (i) salaried or volunteer firefighters . . . shall be presumed to be occupational diseases, suffered in the line of duty, that are covered by this title unless such presumption is overcome by a preponderance of competent evidence to the contrary.

"[T]he purpose of the statutory presumption is to establish by law, in the absence of evidence, a causal connection between certain occupations and death or disability resulting from specified diseases." Bass v. Richmond Police Dep't, 258 Va. 103, 112, 515 S.E.2d 557, 561 (1999). To overcome Code § 65.2-402(B)'s presumption, an employer "must show, by a preponderance of the evidence, both that 1) the claimant's disease was not caused by his employment, and 2) there

- 6 -

was a non-work-related cause of the disease." Id. at 114, 515 S.E.2d at 562-63. However, "an employer is not required to exclude the possibility that job stress may have been a contributing factor in the development of a claimant's heart disease." Id. at 113, 515 S.E.2d at 562. Moreover, "evidence that merely rebuts generally the underlying premise of the statute, which establishes a causal link between stress and heart disease, is not probative evidence for purposes of overcoming the presumption [that the heart disease is occupational]." Medlin v. Henrico Police, 34 Va. App. 396, 407, 542 S.E.2d 33, 39 (2001).

Whether an employer meets its burden to rebut the presumption under Code § 65.2-402 is a determination "made by the Commission after exercising its role as finder of fact. In this role, the Commission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions." Bass, 258 Va. at 114, 515 S.E.2d at 563. "On appeal from this determination, the reviewing court must assess whether there is credible evidence to support the Commission's award." Id. at 115, 515 S.E.2d at 563 (citing Celanese Fibers Co. v Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985)). A question that the commission resolves based on conflicting medical evidence is a question of fact, and the commission's factual findings are binding on appeal unless unsupported by credible evidence. See Celanese Fibers Co., 229 Va. at 120-21, 326 S.E.2d at 690.

It follows then that we must affirm the commission's decision on this issue unless the commission's resolution lacks credible, supporting evidence. In this regard, we appreciate the difficult and sensitive nature of claimant's work as a firefighter and the toll it has taken on his health. However, our review is limited to determining whether the record contains an evidentiary basis for the commission's decision. From the record before us, there is ample credible evidence in the record to support the commission's conclusion.

When, as in a case like the one at bar, the record includes conflicting medical opinions, we are obliged to give great weight to an attending physician who is positive in his diagnosis of a disease. Imperial Trash Serv. v. Dotson, 18 Va. App. 600, 606, 445 S.E.2d 716, 720 (1994) (citing McPeek v. P.W. & W. Coal Co., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969)). Here, the commission exercised its authority to choose between conflicting medical opinions regarding the cause of claimant's HCM and chose to rely on Dr. Bui's opinion that claimant suffers from HOCM, which is genetic and not work-related. Dr. Bui was not only claimant's attending physician, but he treated claimant for nearly three years prior to the evidentiary hearing before the deputy commissioner. Notably, Dr. Bui repeatedly refused to opine that claimant's work-related hypertension caused the HCM. He also pointed to objective indicators to support his diagnosis of HOCM: Claimant's heart murmur, the pressure gradient, and the SAM of the mitral valve in the heart.

On the other hand, Dr. Tucker examined claimant only once and could not recollect whether claimant had a heart murmur. He ordered genetic testing for claimant, but the report from the testing facility itself and Dr. Bui noted that this testing did not cover all gene regions known to cause HOCM. Moreover, Dr. Tucker admitted that the improvement in claimant's pressure gradient from the September 2007 echocardiogram and the echocardiogram that Dr. Tucker conducted in October 2008 could have resulted from Dr. Bui's treatment of claimant.

Accordingly, we find no error in the commission's decision to credit the diagnosis of claimant's attending physician, Dr. Bui, over that of the independent medical examiner, Dr. Tucker. Credible evidence in the record supported the commission's determination that employer met its burden to demonstrate that claimant's HOCM was (1) not caused by his employment and (2) had another non-work-related, i.e. genetic, cause. We are therefore bound by that determination on appeal.

### B. Claimant's Marketing Efforts

As noted above, claimant conceded at oral argument that his argument on this second assignment of error would be moot if we agreed with the commission's determination regarding the cause of claimant's cardiac condition. Because we affirm the commission on that issue, we find claimant's second assignment of error moot and decline to address it on appeal.

### CONCLUSION

The commission properly held that employer met its burden to overcome Code § 65.2-402's presumption as applied to claimant's HCM. Based on that determination, claimant's second assignment of error is moot. Accordingly, we affirm the decision below.

Affirmed.