Hillsborough-northern judicial district
No. 93-180

CITY OF MANCHESTER FIRE DEPARTMENT

v.

ROBERT J. GELINAS

October 21, 1994

*Devine, Millimet & Branch, P.A.,* of Manchester (*Richard E. Galway* and *Julie Ann Boyle* on the brief, and *Mr. Galway* orally), for the plaintiff.

*Craig, Wenners, Craig & Casinghino, P.A.,* of Manchester (*Vincent A. Wenners, Jr.,* on the brief, and *Gary L. Casinghino* orally), for the defendant.

BATCHELDER, J.    The plaintiff, City of Manchester Fire Department (employer) appeals the decision of the Superior Court (*Hampsey,* J.), affirming, after a trial *de novo,* the labor commissioner's grant of workers' compensation benefits to the defendant, Robert J. Gelinas (claimant). We affirm.

On January 18, 1989, the claimant, age fifty-four, suffered a heart attack in Florida while competing in a tennis tournament. He underwent cardiac catheterization, which led to a coronary artery bypass grafting on January 24, 1989. The claimant had retired from the Manchester Fire Department on February 1, 1985. He had been a line firefighter for over twenty-six years. For approximately the first nineteen years of his employment, he seldom used a protective inhalator. Despite his repeated exposure to smoke, he never sought medical attention in connection with smoke inhalation. The claimant never smoked, and to his knowledge, his family had no history of heart trouble.

A trial *de novo* was held in superior court on the employer's appeal from an adverse ruling by the labor department. The only issue was whether the claimant's heart attack and underlying coronary disease were work-related. The claimant testified concerning his employment and medical history but introduced no medical evidence. Instead, he relied on the statutory presumption that a work-related causal relationship exists when a retired firefighter develops heart disease within five years of retirement. RSA 281-A:17 (Supp. 1993). The employer presented the testimony of Dr. Elliot Sagall, a cardiologist. Dr. Sagall had reviewed the claimant's hospital records and examined him in 1990. In Dr. Sagall's opinion, the claimant's heart attack was triggered by the exertion of playing tennis "superimposed upon an underlying coronary artery disease"; partial blockage of the right coronary artery, leading to the portion of the heart where the attack occurred, already existed. According to the claimant's records, heart catheterization revealed one hundred percent and ninety-five percent blockage of two arteries, necessitating bypass surgery. Dr. Sagall testified that the underlying condition, coronary atherosclerotic heart disease, is generally believed to be of unknown cause resulting from a multiplicity of factors, "primarily a genetic predisposition with aggravation from certain recognized risk factors." The risk factors he identified as specific to the claimant, aside from his age and gender, were obesity and high blood pressure. The only evidence he cited of high blood pressure

was from his examination of the claimant. In his report written after examining the claimant, Dr. Sagall stated that the "heart attack resulted solely from the natural, spontaneous and inevitable progression of his underlying coronary atherosclerotic heart disease."

The trial court concluded that the employer failed to rebut the presumption that the heart disease was work-related. In reaching this conclusion, the court found no evidence of heart disease at the beginning of the claimant's employment, and that the heart attack resulted from an underlying heart condition that had developed over time. In addition, while noting that some non-occupationally-related risk factors may have been present in the claimant, the court found that the employer had not shown that such non-occupational factors were more probably than not the cause of the underlying heart disease.

On appeal the employer argues that the trial court erred: (1) in purportedly making inconsistent factual findings with respect to causation; (2) in its application of the rebuttable presumption set forth in RSA 281-A:17; and (3) in failing to articulate its reasons for disregarding the uncontroverted medical testimony of Dr. Sagall.

With respect to the first argument, the employer points to its requested finding number twelve, granted by the court: "The exertion of playing tennis caused a rupture of pre-existing plaque, causing thrombotic blockage (a clot) that shut off the flow of blood to the heart." The employer contends that this finding cannot be reconciled with the court's denial of requested finding number eleven: "The claimant's heart attack was caused by the physical exertion of playing tennis, a non-work-related factor." We disagree.

Dr. Sagall testified that the underlying partial blockage, the atherosclerotic heart disease, became a total blockage due to the "triggering stress" of the exertion from tennis. To posit that the heart attack was caused solely by playing tennis, however, as the employer expressed it in its requested finding, is to ignore the underlying disease. Dr. Sagall's own report states that the claimant's heart attack resulted solely from the inevitable progression of his heart disease. There is no inconsistency in the trial court's findings. In making this argument, the employer suggests that the claimed disabling injury or disease is the heart attack and not the preexisting coronary artery disease. We cannot accept so narrow a focus. " 'The timebomb . . . started ticking during working hours; but it happens to go off at a time and place remote from the employment. The hazards of the employment . . . follow the claimant beyond the time and space

limits of his work, and there injure him.' " *Henderson v. Sherwood Motor Hotel,* 105 N.H. 443, 446, 201 A.2d 891, 894 (1964) (quoting 1 LARSON, WORKMEN'S COMPENSATION LAW § 29.22, at 450).

■ ■ The employer next contends that the trial court improperly applied the statutory presumption to both the claimant's underlying heart disease and to the heart attack that led to the bypass surgery. Pursuant to RSA 281-A:17, I, "there shall exist a prima facie presumption that heart or lung disease in a . . . retired member of a fire department is occupationally related." Because the claimant's heart problems occurred within five years of his retirement as a firefighter, he was entitled to the benefit of the presumption. *See* RSA 281-A:17, I (b) (Supp. 1993). Although a claimant must also demonstrate medical causation, *i.e.,* that he suffered from disabling heart disease, "[t]he statutory presumption relieves a firefighter of proving legal causation; *i.e.,* that the heart disease or injury was causally related to his employment." *Cunningham, Adm'x v. Manchester Fire Dep't,* 129 N.H. 232, 235, 525 A.2d 714, 717 (1987).

As we made clear in *Cunningham,* the presumption that heart disease is occupationally related to firefighting operates only with respect to the claimant's burden to show *legal* causation. *Id.* Medical causation, on the other hand, involves proving medically that the claimant in fact has a disabling disease. *Id.* The burden to show medical causation is separate from and unaffected by the issue of whether the disease or injury was caused by employment as a firefighter.

What the employer essentially contends is that the heart attack, not the underlying heart disease, is what allegedly rendered the claimant disabled, and that the heart attack was not work-related. As we have already noted, however, Dr. Sagall's testimony forecloses drawing such a line between the heart disease and the eventual heart attack. If, as Dr. Sagall admitted, the heart attack was the inevitable result of the underlying disease, then *a fortiori* the heart attack was presumptively work-related.

■ In its final claim of error, the employer faults the trial court for disregarding Dr. Sagall's uncontroverted medical opinion on causation without articulating a reason for doing so. An uncontroverted expert's testimony may be rejected by the factfinder as long as reasons therefor are clear in the record. *Appeal of Lambrou,* 136 N.H. 18, 20, 609 A.2d 754, 755 (1992). Dr. Sagall testified that in his opinion the claimant's employment as a firefighter was not the cause of his heart disease. The trial court's order expressly states a reason for discounting the

doctor's opinion: "In his testimony, Dr. Sagall essentially questioned the wisdom of the statutory presumption enacted by the legislature." The record supports this characterization, as Dr. Sagall testified that no medical evidence exists to support the notion that firefighters are more prone than others to develop heart disease. As we have stated before, however:

> [T]he legislature was aware that the exact causation of cardiac diseases is unknown, and that the medical community disagrees as to the role of one's occupation in the development of these diseases. The legislature decided, nevertheless, that a sufficiently positive relationship exists between heart disease and the environmental and stressful aspects of firefighting to warrant the creation of [the statute's] presumption.

*Cunningham,* 129 N.H. at 240, 525 A.2d at 720.

The trial court found that the slight evidence that the claimant may have had some non-work-related risk factors was not sufficient to overcome the presumption that his heart disease was caused by his twenty-six years as a firefighter. As the record supports this conclusion, we will not disturb it. *See Appeal of Gamas,* 138 N.H. 487, 491, 642 A.2d 925, 928 (1994).

*Affirmed.*

All concurred.