**James J. BUCHANAN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

No. 1979 C.D. 1994.

Commonwealth Court of Pennsylvania.

Submitted Feb. 10, 1995.
Decided May 15, 1995.

Thomas F. McDevitt, for petitioner.

Renee Cardwell Hughes, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

James J. Buchanan (Claimant) appeals from the order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision dismissing Claimant's claim petition. We affirm.

Claimant was employed by the City of Philadelphia (Employer) as a fire fighter from 1969 until September 15, 1990, when he suffered a myocardial infarction. On November 29, 1990, Claimant filed a claim petition under Section 108(*o*) of the occupational disease provisions of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 27.1(*o*), alleging disability due to coronary artery disease. Following a hearing at which both parties offered medical testimony, the referee found that although Claimant was suffering from "significant coronary artery disease" and that this disease was disabling, Employer had overcome the rebuttable presumption that Claimant's heart disease arose out of and in the course of his employment as a fire fighter. The referee therefore denied the claim petition and on Claimant's appeal, the Board affirmed. This appeal followed.[1]

■ On appeal, Claimant argues that the referee erred as a matter of law in concluding that Claimant's heart disease was not work-related and that Employer had overcome the presumption that Claimant's heart disease arose out of and in the course of his employment. Claimant further argues that the referee reached this erroneous conclusion by relying on the incompetent testimony of Employer's medical witness, Dr. Norman Makous.

Section 108(*o*) of the Act reads as follows: The term 'occupational disease,' as used in the act, shall mean only the following diseases.

. . . .

(*o*) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fight-

ing for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.

■ A claimant proceeding under this section of the Act must first establish that he or she is suffering from and disabled by this particular occupational disease. *Harrigan v. Workmen's Compensation Appeal Board*, 40 Pa.Commonwealth Ct. 390, 397 A.2d 490 (1979). Once such occupational disease is established, however, the claimant is entitled to the presumption that it arose out of and in the course of his or her employment, as provided by Section 301(e) of the Act, 77 P.S. § 413. *Id.* The presumption, however, is not conclusive, and may be rebutted by substantial, competent evidence. *Marcks v. Workmen's Compensation Appeal Board (City of Allentown)*, 119 Pa.Commonwealth Ct. 214, 547 A.2d 460 (1988).

Claimant argues that Employer's rebuttal evidence was incompetent, pointing to a portion of Dr. Makous's testimony in which he stated that in his opinion, Claimant's years as a fire fighter did not cause or aggravate his coronary heart disease. In response to a question posed to him on cross-examination, specifically, why there was not a correlation between the inhalation of cigarette smoke, which is recognized by the medical profession as a risk in developing heart diseases, and the inhalation of toxic fumes that a fire fighter might experience, Dr. Makous responded:

Well, it's well established through a number of extensive medical studies over a long period of time that cigarette smoking is a strong risk factor. However, what it has not established is the basis for this. And if nicotine is the basis for this, as many people think, and some of the evidence shows, firefighters are not being subjected to this type of injury from smoke inhalation because it doesn't have nicotine in it.

---

1. Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether the necessary findings of fact are not

supported by substantial evidence. *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 155 Pa.Commonwealth Ct. 556, 625 A.2d 751 (1993).

The point is we don't know the exact basis for the damage from cigarette smoking. And if it were such a factor, then somewhere along the way it would be evident that firefighting is a risk factor. And this has not been established because when firefighters are controlled for hypertension, cigarette smoking, cholesterol abnormalities, family histories, it's found out that firefighters do not suffer any more heart disease of this type than do non-firefighters.

(April 6, 1992 Deposition of Dr. Norman Makous, pp. 55–56.)

Claimant argues that Dr. Makous's testimony is similar to the testimony of the employer's medical witness in *Marcks*, wherein this Court held that "[t]he opinion of Employer's medical expert that Claimant's thirty three years of exposure to the hazards of an occupational disease had a 'practically nonexistent' effect on Claimant's heart and lungs, which the referee chose to accept in his Finding of Fact No. 8, is incompetent as a matter of law." *Id.* at 220, 547 A.2d at 464.

The determination of whether the testimony of a medical witness is competent is a question of law and as such, fully reviewable by this Court. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Kudra)*, 136 Pa.Commonwealth Ct. 720, 584 A.2d 1088 (1990), *petition for allowance of appeal denied*, 527 Pa. 652, 593 A.2d 423 (1991). Our review must encompass the witness's entire testimony, and not merely isolated statements, in reaching our determination. *Bernardini v. Workmen's Compensation Appeal Board (Italian Marble Mosaic Co.)*, 97 Pa.Commonwealth Ct. 514, 510 A.2d 382 (1986). In Dr. Makous's testimony quoted above, he isolated only one of the risks normally associated with being a fire fighter, namely smoke inhalation, and opined that there was no medical evidence to show what effect this type of smoke has had in the development of heart diseases. Cigarette smoke containing nicotine on the other hand, has been established to have an effect on the development of heart diseases.

Further on cross-examination, Dr. Makous acknowledged that under certain circumstances, a person such as Claimant who has a demonstrated progressive heart disease, when exposed to toxic fumes and gases and who has participated in strenuous exertional activities, would be more susceptible to having a myocardial infarction than the normal healthy adult. However, while not discounting the stress of the physical activity that firefighters are faced with and the adverse cardiac response it can cause, Dr. Makous opined that, with respect to Claimant, even considering the number of years Claimant spent as a firefighter, he did not believe that Claimant's heart disease was causally related to being a firefighter.

Before reaching this conclusion, in addition to his physical examination of Claimant, Dr. Makous, who is board certified in both internal medicine and cardiovascular diseases, took Claimant's medical history and reviewed Claimant's extensive medical records from the Police and Fire Medical Association and the various tests performed at Graduate Hospital in August and September of 1990, as well as Claimant's hospital admissions records for his heart catheterization and subsequent quadruple by-pass surgery performed at Graduate Hospital in September and October of 1990, respectively. Following his review of the medical documents, Dr. Makous outlined a number of risk factors that in his opinion, led to the development of Claimant's coronary heart disease.

First, Dr. Makous testified that the fact that both Claimant's mother and father had hypertension would increase Claimant's chances of also having hypertension on a genetic basis; second, Claimant's father suffered his first heart attack at either age 58 or 62 and subsequently died of a heart attack at age 68; third, Claimant smoked one half pack of cigarettes a day for approximately twenty years; fourth, Claimant had significant blood pressure elevation detected beginning in 1984; fifth, Claimant suffered a myocardial infarction or heart attack that went undetected sometime between March of 1988 and August of 1990; sixth, Claimant was found to have marked blood cholesterol and lipid abnormalities; and seventh, Claimant developed angina pectoris approximately one month before his by-pass surgery on October 1, 1990. (Dr. Makous's Deposition, pp. 33–

35.) It was Dr. Makous's opinion, within a reasonable degree of medical certainty, that Claimant's "underlying coronary atherosclerosis and his complications of a myocardial infarction and angina pectoris were the result of these intrinsic factors which caused his coronary disease." (*Id.* at 36.)

We would fully agree with Claimant if the above quoted testimony of Dr. Makous given on cross examination was the sole basis for his opinion, because it is clear that our legislature has determined that heart disease is causally related to being a firefighter. This is what creates the presumption in Claimant's favor. This, however, is a rebuttable presumption, and the question is whether a reading of the total testimony shows that there is present sufficient testimony to rebut the presumption of causal connection. It appears that the referee concluded that Dr. Makous did give Claimant the benefit of the rebuttable presumption contained in Section 108(*o*), but he went on to list a series of *other intrinsic factors* which he opined caused Claimant's heart disease. Accordingly, we conclude that Dr. Makous's testimony taken as a whole is competent and constitutes substantial evidence upon which the referee could properly conclude that Employer successfully rebutted the non-conclusive presumption that Claimant's heart disease was compensable under Section 108(*o*) of the Act. Accordingly, finding no error of law, we affirm the order of the Board.

### ORDER

AND NOW, this 15th day of May, 1995, the order of the Workmen's Compensation Appeal Board at No. A93–0647 and dated July 12, 1994, is affirmed.