Glen E. BYOUS, Appellant,

v.

The MISSOURI LOCAL GOVERNMENT EMPLOYEES RETIREMENT SYSTEM BOARD OF TRUSTEES, Respondent.

No. WD 63537.

Missouri Court of Appeals, Western District.

March 8, 2005.

Lawrence G. Rebman, Kansas City, MO, for appellant.

Tyson H. Ketchum, Kansas City, MO, for respondent.

Before: EDWIN H. SMITH, C.J., HAROLD L. LOWENSTEIN, ROBERT G. ULRICH, PATRICIA A. BRECKENRIDGE, PAUL M. SPINDEN, JAMES M. SMART, JOSEPH M. ELLIS, VICTOR C. HOWARD, THOMAS H. NEWTON, RONALD R. HOLLIGER and LISA WHITE HARDWICK, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. Glen Byous became permanently and totally incapacitated from his job as a firefighter after he had a heart attack on September 26, 2000, and was diagnosed with coronary artery disease. As a member of the Missouri Local Government Employees Retirement System (LAGERS), he sought work-related disability benefits. Although he was entitled to the statutory presumption that his disability was work-related, the LAGERS Board of Trustees (Board) found that this presumption was rebutted by competent evidence.

The statutory presumption shifts both the burden of production and the burden of persuasion to the party claiming that the disability is not work-related. Evidence that a disability is not caused by work is insufficient to rebut the presumption; the evidence must show that the disability was more probably than not caused by a non-work-related cause and identify the cause. The evidence here did not do this. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Byous worked for more than twenty-five years as a firefighter for the City of St. Joseph. During that time he was a member of LAGERS, which provides for the retirement of officers and employees of any political subdivision of the state.

On September 26, 2000, at age 54, Mr. Byous worked as a driver/engineer at a fire. He felt some discomfort afterwards, and that evening he went to the hospital where he was treated for a myocardial infarction (heart attack) and diagnosed with coronary artery disease. After that episode he was unable to return to work.

On September 5, 2001, Mr. Byous applied for work-related disability retirement benefits under section 70.680.3.[1] On October 12, 2001, the LAGERS Medical Committee reported to the Board, by majority opinion, that Mr. Byous was permanently and totally incapacitated from his job as a firefighter and eligible to be retired. But Mr. Byous' initial claim for work-related disability under section 70.680.3 was denied.

Mr. Byous appealed, and a formal administrative hearing was held. At the hearing, Mr. Byous asserted that he was entitled to the section 87.006 presumption that his heart condition resulted from firefighting. Further, he had a physical-fitness-for-duty examination on March 21, 1997, which did not reveal any evidence of heart problems.[2] LAGERS presented evidence that Mr. Byous was not entitled to the section 87.006 presumption and, even if he was, his heart condition was not work-related. For this latter proposition, LAGERS relied on two reports from Dr. Michael Farrar, a cardiologist who treated Mr. Byous, and the deposition testimony of Dr. Francisco Lammoglia, Mr. Byous' cardiologist, both of whom stated that the

---

1. Unless otherwise indicated, all statutory references are to RSMo. (2000).

2. Dr. David Cathcart conducted this physical-fitness-for-duty examination. Dr. Cathcart provided an affidavit to LAGERS which stated that "Mr. Byous passed the fitness for duty examination [on March 21, 1997] which failed to reveal any objective evidence of coronary artery disease or blockage."

underlying coronary artery disease was not work-related but due to risk factors.

Dr. Farrar wrote two letters summarizing his findings after examining Mr. Byous. On April 16, 2001, he stated that his impression was that:

His [Mr. Byous'] myocardial infarction did occur while at work doing moderately strenuous physical activity. However, like most males that have myocardial infarction at work doing strenuous activity, he had multiple risk factors for coronary artery disease including cigarette smoking, hypertension, and hypercholesterolemia, as well as a family history of premature coronary artery disease. Therefore, while the heavy work did contribute to the precipitation of his acute myocardial infarction, the risk factors as listed above are the predominant cause of his myocardial infarction and not the work itself.

Dr. Farrar then supplemented his medical evaluation of Mr. Byous on May 16, 2001, stating that:

Mr. Byous has underlying coronary artery disease involving the right and left anterior descending coronary arteries which has resulted from his risk factors for developing coronary artery disease, not from working as a fireman. His coronary artery disease has resulted from cigarette smoking, hypertension, hyperlipidemia and genetic influences indicated by a family history of premature coronary artery disease. While his myocardial infarction was ultimately precipitated by fighting a fire, it should be pointed out that hard work alone, in the absence of coronary artery disease, will not cause a heart attack, and does not cause coronary artery disease.

Rather, the myocardial infarction is only precipitated by hard work in the presence of coronary artery disease with unstable plaque. The coronary artery disease is caused by the other factors noted above.

During cross-examination by LAGERS' attorney, when asked whether Mr. Byous' coronary artery disease, not the heart attack, developed as a result of his work in the fire department, Dr. Lammoglia answered, "No." He stated that Mr. Byous' coronary artery disease is based on certain risk factors: male, hypertension, hypercholesterolemia, and smoking. Dr. Lammoglia also said that he did not indicate that coronary artery disease is caused by risk factors, but that they are associated with the disease.

The Board adopted the hearing officer's Findings of Fact and Conclusions of Law. It found that Mr. Byous was totally and permanently incapacitated from his duties and that the section 87.006 presumption applied to him.[3] It then found that LAGERS had rebutted the presumption with medical evidence showing that Mr. Byous' condition was not work-related. The Board found that there was no evidence in the record refuting the doctors' opinions that Mr. Byous' coronary artery disease is not work-related. It found that both doctors' medical opinions constituted substantial and competent evidence to rebut the presumption. Therefore, Mr. Byous was denied duty-disability payments under section 70.680.3.

Mr. Byous appealed this decision to the trial court, which affirmed the Board's decision.

---

3. As part of meeting this presumption, Mr. Byous must have passed a physical examination that failed to reveal any evidence of a heart condition within five years prior to the time that he made a claim for disability. The Board found that he had done so, and neither party disputes this on appeal.

Mr. Byous brings one point on appeal. He claims that the LAGERS Board committed reversible error when it found that the medical evidence from Drs. Farrar and Lammoglia constituted legally competent evidence to rebut the section 87.006 statutory presumption that his injury was work-related. He claims that under section 536.140, the finding is unsupported by competent and substantial evidence upon the whole record because it relied on evidence that merely rebuts the statute's underlying premise.

## II. STANDARD OF REVIEW

■ When a party appeals a trial court's review of an administrative decision, we review the decision of the administrative agency, not the trial court. *Nance v. State Tax Comm'n of Mo.*, 18 S.W.3d 611, 615 (Mo.App. W.D.2000). Our scope of review is limited by section 536.140.2 and in this case we are considering only whether the Board's decision was supported by competent and substantial evidence upon the whole record. § 536.140.2(3); *Nance*, 18 S.W.3d at 615. We do not substitute our judgment for that of the Board; we instead ascertain whether the Board could "reasonably have made its findings and reached its decision on the basis of all the evidence before it." *Hay v. Schwartz*, 982 S.W.2d 295, 300 (Mo. App. W.D.1998).

Both parties agree that in this case the facts are not in dispute and we are only reviewing the application of the law to the facts. As such, we may weigh the evidence ourselves. § 536.140.3. But in doing so we must give due weight to the opportunity of the agency to observe witnesses and to its expertise and experience. *In re Thomas*, 926 S.W.2d 163, 165 (Mo.App. E.D.1996).

## III. LEGAL ANALYSIS

Mr. Byous sought duty-disability retirement under section 70.680.3. To receive disability retirement under this section, he must prove that he was totally and permanently physically incapacitated for duty as an employee, as the natural and proximate result of an injury or disease that the Board finds "to have arisen out of and in the course of his actual performance of duty as an employee." § 70.680.3. Mr. Byous proved that he is totally and permanently physically incapacitated for duty as a firefighter and that has been stipulated to by the parties. The element in dispute is whether he showed that his incapacity is the result of an on-the-job injury.

■ In general, the employee has the burden of establishing his entitlement to benefits: that his heart disease arose from work-related duties. *Hay*, 982 S.W.2d at 301. Mr. Byous, however, does not have this burden because the Board found that the section 87.006 presumption applies to him. When this presumption applies, a disease of the heart resulting in total or partial disability "shall be presumed to have been suffered in line of duty, unless the contrary be shown by competent evidence." § 87.006.1. Because his heart disease was presumed to be work-related, LAGERS had the burden of showing by competent evidence that it was not work-related.

■ The Board found that this presumption was rebutted. So under our standard of review, we must decide whether there is competent and substantial evidence to support the Board's finding that the section 87.006 presumption was rebutted by competent evidence. Competent evidence is relevant and admissible evidence that can establish the fact in issue. *Knapp v. Mo. Local Gov't Employees Retirement Sys.*, 738 S.W.2d 903, 913 (Mo. App. W.D.1987). Substantial evidence is

evidence that if true has probative force upon the issues, and it must be competent evidence. *Id.*

LAGERS claims that because it rebutted this presumption, Mr. Byous had to prove that his heart disease was work-related. Mr. Byous claims that the presumption was never rebutted by competent evidence and, therefore, he did not lose the presumption and had no burden to prove that his disease was related to work. So the issue is whether LAGERS presented competent evidence to rebut the section 87.006 presumption, i.e., did LAGERS present relevant and admissible evidence that establishes that Mr. Byous' heart disease was not suffered in the line of duty? We have determined that it did not.

Mr. Byous claims that Missouri case law has not addressed the question of what constitutes legally competent evidence to rebut the section 87.006 statutory presumption. LAGERS claims that Missouri has dealt with this question and answered it in *Sprague v. City of Springfield,* 641 S.W.2d 814 (Mo.App. S.D.1982). *Sprague,* however, was affirmed under Rule 84.16(b)(4) RSMo. (1982). Like the current Rule 84.16(b), such a decision has no precedential value. As such, we cannot and do not look to *Sprague* for direction in deciding this case. Mr. Byous is, therefore, correct that we have no Missouri law dealing with the question in this case and that this is an issue of first impression.

## A. Application of the Section 87.006 Statutory Presumption

In this case we are dealing with the interaction of the burden of proof and presumptions. The burden of proof has two parts: the burden of production and the burden of persuasion. BLACK'S LAW DICTIONARY 209 (8th ed.2004). The burden of production requires the party to introduce enough evidence on an issue to have that issue decided by a fact-finder. *Id.* The burden of persuasion requires the party to convince the fact-finder to favor that party. *Id.* A presumption alters who has these various burdens, shifting them from one party to another. *Id.* at 1223.

Because we are construing a statute, we use the rules of statutory construction. We must ascertain the legislature's intent from the language used and, if possible, give effect to that intent. *State ex rel. Nixon v. QuikTrip Corp.,* 133 S.W.3d 33, 37 (Mo. banc 2004). We must consider the object the legislature is seeking to accomplish and aim to resolve the problems addressed by the legislature. *Id.* We give the words and phrases used their plain and ordinary meaning. *Id.* The applicable statute states that

> Notwithstanding the provisions of any law to the contrary, and only for the purpose of computing retirement benefits provided by an established retirement plan, after five years' service, any condition of impairment of health caused by any disease of the lungs or respiratory tract, hypotension, hypertension, or disease of the heart resulting in total or partial disability or death to a uniformed member of a paid fire department, who successfully passed a physical examination within five years prior to the time a claim is made for such disability or death, which examination failed to reveal any evidence of such condition, shall be presumed to have been suffered in line of duty, unless the contrary be shown by competent evidence.

§ 87.006.[4]

We unfortunately do not have the benefit of knowing what prompted the Missouri

---

4. As stated in the facts section, the Board found that section 87.006 applied to Mr.

Byous. As this finding was not appealed, the only part of the statute about which we are

legislature to establish this presumption. But by adopting this presumption it is clear that the legislature has decided that there is a causal relationship between work as a firefighter and heart disease. The legislature clearly intended to aid firefighters in their claims for disability benefits under section 70.680.3 by creating this presumption in their favor.

■ As LAGERS correctly points out, under the general rule in Missouri, when a party against whom a presumption operates introduces evidence controverting a presumed fact, that fact must then be determined from the evidence in the case as if there never was a presumption. *Mercantile Bank & Trust Co. v. Vilkins,* 712 S.W.2d 1, 3 (Mo.App. W.D.1986). The underlying facts giving rise to the presumption are still, of course, in evidence and may be considered. *Michler v. Krey Packing Co.,* 363 Mo. 707, 253 S.W.2d 136, 140 (1952). Based on this rule of presumptions, LAGERS asserts that the section 87.006 presumption only shifted the burden of production to it, and the burden of persuasion remained on Mr. Byous. But presumptions may also shift the burden of persuasion, and, when the presumption is not merely a procedural rule, Missouri courts have found that the presumption has also shifted this burden. *See e.g., Clear v. Mo. Coordinating Bd. for Higher Educ.,* 23 S.W.3d 896, 900 (Mo.App. E.D. 2000) (when a party offers proof of proper mailing, there is a presumption that the letter has been received; "[e]vidence of non-receipt does not nullify the presumption but leaves the question for the determination of the finder of fact under all the facts and circumstances of the case"); *Loehr v. Starke,* 332 Mo. 131, 56 S.W.2d 772, 776 (1932) (presumption of undue in-

fluence in procuring a will is not a mere legal fiction or procedural rule and once the presumption exists it "never does or can disappear but raises an issue for the jury"). So we must decide what burdens this presumption shifts.

Besides *Sprague,* there are no other Missouri cases discussing section 87.006, so we will consider the law from other states. We have read the cases relied on by both parties: Mr. Byous' cases requiring a higher quantum of proof and LAGERS' cases holding that the amount of proof offered here is sufficient. We do not agree with the attempted distinctions between these cases drawn by both parties because we believe that the cases are not factually different, they merely represent different views on how to address these types of presumptions and whether sufficient evidence has been presented to rebut them. We are persuaded that the cases relied on by Mr. Byous are a better way to approach the presumption in this statute.

In deciding how to apply this presumption, we are particularly persuaded by the New Hampshire Supreme Court's discussion of presumptions in *Cunningham v. City of Manchester Fire Dep't,* 129 N.H. 232, 525 A.2d 714 (1987). The court discusses two types of presumption theories: Thayer and Morgan.[5] Under the Thayer theory, the presumption shifts only the burden of production, and, once evidence is produced sufficient to support a finding contrary to the presumed fact, the presumption disappears. *Id.* at 717. This is the theory of presumptions to which LAGERS directed us, and this generally controls in Missouri. The Morgan theory applies when there are strong social policy reasons underlying the presumption, such

concerned in this appeal is whether or not the presumption was rebutted by competent evidence.

**5.** Attributed to legal scholars James Bradley Thayer and Professor Edmund Morgan.

that the presumption continues to exist even when evidence has been introduced that tends to rebut the existence of the presumed fact. *Id.* When such a presumption exists, the opponent of the presumption must demonstrate the non-existence of the presumed fact by at least a preponderance of the evidence. *Id.* This is the theory applied in Missouri to undue influence cases.

New Hampshire suggests that when deciding which theory should govern a particular presumption, the court must consider whether the statute reflects a significant policy objective. *Id.* at 717–18. The relevant New Hampshire statute stated that "there shall exist a prima facie presumption that heart or lung disease in a firefighter is occupationally related." N.H.REV.STAT. § 281:2, V-a (2003). The Supreme Court decided that the apparent purpose of the statute "is to implement a social policy of providing compensation to firefighters in those circumstances where the medical evidence fails to establish the etiology of the plaintiff's heart disease. In order to give full effect to the legislative intent, the presumption must be endowed with a force consistent with the legislative concerns underlying the presumption." 525 A.2d at 718. The Court decided that the Thayer theory would lessen the strength of the statute and held that the Morgan theory must apply to the presumption. *Id.* The Court held that the defendant bears the burden of persuasion and "can rebut the presumption only by producing evidence that one or more non-occupationally-related factors were more probably the cause of the plaintiff's heart disease than his firefighter occupation." *Id.* The Court also stated that to rebut this presumption, the defendant must show that risk factors of heart disease existed and were non-work-related. *Id.* at 718, 721 (hypertension is a risk factor for

heart disease, but the defendant must show that the hypertensive condition itself is non-work-related).

We also find the law established in North Dakota persuasive. Under the comparable North Dakota statute, any respiratory or heart disease suffered by a firefighter or law enforcement officer "resulting in total or partial disability or death is presumed to have been suffered in the line of duty. The condition or impairment of health may not be attributed to any disease existing before that total or partial disability or death unless the contrary is shown by competent evidence." N.D. CENT. CODE § 65–01–15.1; *Robertson v. N.D. Workers Comp. Bureau,* 616 N.W.2d 844, 853 (N.D.2000). This presumption shifts the burden of production and the burden of persuasion from the claimant to the party asserting that the claimant is not entitled to benefits. *Robertson,* 616 N.W.2d at 853. This presumption requires the defendant to prove that "the nonexistence of the presumed fact is more probable than its existence." *Id.* So the defendant must prove that the heart disease was not suffered in the line of duty. *Id.* The Court then stated that when the disease has multiple factors, employment does not need to be the sole cause of the disease, "it is sufficient if the work condition is a significant contributing factor to the disease." *Id.* The Court also held that reliance on any risk factors that manifested after the plaintiff began working in law enforcement was misplaced. *Id.* at 855.

In a different case, the North Dakota Supreme Court said that the purpose of the presumption is "to relieve firefighters of the nearly impossible burden of proving firefighting actually caused their disease." *Wanstrom v. N.D. Workers Comp. Bureau,* 621 N.W.2d 864, 867 (N.D.2001). Further, work does not have to be the sole

cause and "just because personal habits make a worker more prone to certain injuries," a claim cannot be denied when the evidence indicates with reasonable medical certainty that work is causally related to the injury. *Id.* (internal quotation marks and citation omitted). The Court went on to say that, although this presumption puts a high burden on defendants, it is not impossible, and there have been cases where the defendants have proven that work was not a substantial contributing factor to the disease. *Id.* at 868–69. *See e.g., Burrows v. N.D. Workers' Comp. Bureau,* 510 N.W.2d 617, 617–19 (N.D.1994) (plaintiff filed for death benefits after her husband, a police officer who smoked, died from lung cancer, relying on the statutory presumption that such disease was occupational; the presumption was rebutted by evidence from two doctors that decedent was statistically 50 times more likely to develop lung cancer than a non-smoker and that the probability that his lung cancer was due to his smoking, and not work, was quite strong).

In Virginia, heart disease causing the death or disability of firefighters or police officers "shall be presumed to be occupational diseases, suffered in the line of duty, that are covered by this title unless such presumption is overcome by a preponderance of competent evidence to the contrary." VA.CODE ANN. § 65.2–402(B) (2004). "[T]he purpose of the statutory presumption is to establish by law, in the absence of evidence, a causal connection between certain occupations and death or disability resulting from specified diseases." *Bass v. City of Richmond Police Dep't.,* 258 Va. 103, 515 S.E.2d 557, 561 (1999). For an employer to overcome this presumption, it must meet a two-part test showing by a preponderance of the evidence that (1) claimant's disease was not caused by his employment, and (2) there

was a non-work-related cause of the disease. *Id.* at 561–62.

LAGERS directs us to several states that employ the Thayer theory for a similar statutory presumption. We have read them and do not find them as persuasive as the cases discussed above. In Michigan, under the comparable statute, respiratory and heart diseases in firefighters "are deemed to arise out of and in the course of employment in the absence of evidence to the contrary." MICH. COMP. LAWS ANN. § 418.405(2) (1999). Under older case law in Michigan, that presumption could not be rebutted unless the defendant produced evidence of a non-work-related cause. *Schave v. Dep't of State Police,* 58 Mich.App. 178, 227 N.W.2d 278, 282 (1975). The Michigan Court of Appeals, however, overruled *Schave* in *Price v. Bloomfield Township,* 244 Mich.App. 410, 625 N.W.2d 790, 794 (2001) (overruled on procedural grounds in *Price v. Bloomfield Township,* 467 Mich. 918, 654 N.W.2d 97, 97 (2002)). As LAGERS correctly points out, the Michigan Court of Appeals applied the Thayer theory and held that the presumption could be overcome if the employer came forward with evidence "by which a factfinder might conclude that the physical injury did not result from the employment." *Id.* at 795. But we do not find the *Price* decision persuasive for three reasons. First, when the Michigan Supreme Court considered *Price* on appeal, it specifically stated that it did not address the merits of the Court of Appeals overruling of *Schave. Price,* 654 N.W.2d at 97. If the Michigan Supreme Court thereby implicitly affirmed the Court of Appeals' overruling of *Schave,* we believe that the Court of Appeals decision in *Price* is incorrect and that its interpretation of the statute under *Schave* was the correct decision. And finally, the statute has a lower standard because it does not require competent evidence.

Pennsylvania also appears to use the Thayer theory for its statute, which states that an occupational disease is presumed to arise "out of and in the course of his employment, but this presumption shall not be conclusive." 77 PA. CONS.STAT. § 413 (2002). Pennsylvania has stated that the statutory presumption is a procedural or evidentiary advantage to a claimant. *City of Wilkes–Barre v. Workmen's Comp. Appeal Bd.,* 541 Pa. 435, 664 A.2d 90, 92 (1995). We choose not to follow this view of the presumption because Pennsylvania's statute has a lower standard of proof and because of the compelling social policy in our statute.

Because we find the reasoning in the New Hampshire, North Dakota, and Virginia cases most compelling, we choose to follow them in applying the Morgan theory to our statutory presumption. We recognize that their statutes are not worded exactly like ours. They are still substantively similar, however, and New Hampshire's statute even has a lower standard. There is a strong social policy underlying this statute to provide compensation for firefighters if they develop debilitating heart and respiratory diseases that may have been caused by their work. As such, we agree with the New Hampshire Supreme Court that this presumption should not just disappear based on evidence to the contrary. To respect the legislature's decision to provide this presumption, it cannot be overcome by a small amount of evidence.

■ We hold, therefore, that the section 87.006 presumption shifts both the burdens of production and persuasion to the employer. The employer must show by a preponderance of the evidence that the nonexistence of the presumed fact is more probable than its existence, i.e. that non-work-related causes more probably caused the heart disease than work-related causes. Phrased another way, the employer must show both that the employee's disease was not caused by his work and that there was a non-work-related cause of the disease. If the employer successfully meets this requirement and rebuts the presumption, then the employee no longer has the benefit of the section 87.006 presumption. Because the employee is seeking benefits under section 70.680.3, he is still free to present evidence showing that his disease is work-related; he simply no longer has the presumption to make this causal connection.

**B. Assessment of the Evidence under the Section 87.006 Statutory Presumption**

■ Now that we have an understanding of how this presumption operates, we consider whether LAGERS presented competent evidence to rebut this presumption.

LAGERS attempted to rebut the section 87.006 presumption by presenting evidence from two cardiologists to show that Mr. Byous' heart disease was not work-related. Mr. Byous claims that this evidence was not sufficient to overcome the presumption because Dr. Farrar and Dr. Lammoglia were simply rebutting the underlying premise of section 87.006. He focuses on the fact that Dr. Farrar said that "hard work alone, in the absence of coronary artery disease, will not cause a heart attack, and does not cause coronary artery disease." He claims that this merely rebuts the underlying premise of the statute, i.e., that such disease of the heart "shall be presumed to have been suffered in the line of duty." § 87.006. Similarly, Mr. Byous claims that Dr. Lammoglia only denies the underlying presumption because he merely states that the coronary artery disease was not work-related and could not state the cause of the disease. Further, Dr. Lam-

moglia only stated that Mr. Byous had risk factors that could or could not lead to coronary artery disease. Mr. Byous claims that since Dr. Lammoglia did not know what caused the coronary artery disease but did know that Mr. Byous' work did not cause it, he was denying any causal relationship between coronary artery disease and the work of a firefighter.

Mr. Byous further claims that aside from attacking the underlying premise, the doctors did not present competent evidence that his work did not contribute to his heart disease. Dr. Farrar stated that fighting a fire ultimately precipitated the myocardial infarction and Dr. Lammoglia could not state what exactly caused Mr. Byous' coronary artery disease, or when it developed. Dr. Lammoglia also admitted that he had no objective way of determining whether Mr. Byous' firefighting activities contributed to his medical condition.

We agree with Mr. Byous that both doctors really only rebutted the underlying premise of the statute. While they mentioned the several risk factors that Mr. Byous had, they did not show that those risk factors were not work-related. And they really did not establish that it was more probable than not that work was not a contributing cause because they stated that work was not a cause of heart disease. The law from other states discussed above also considered whether evidence merely rebutting the underlying premise of the statute is sufficient to rebut the presumption. They all agree that such evidence is not sufficient. *See Cunningham*, 525 A.2d at 720 (medical expert testimony was insufficient to rebut the presumption because the expert only attacked the rationale of the statute, he did not produce evidence of non-work-related causes); *Robertson*, 616 N.W.2d at 855 ("We agree the effect of the presumption would be defeated if it could be rebutted by expert medical opinion generally denying the validity of the legislatively enacted premise that work stress causes heart problems. We conclude expert medical opinion that denies the underlying premise of a causal relationship between a law enforcement officer's work stress, including the claimant's predisposition to risk factors, and heart disease is insufficient to rebut the presumption the heart disease was suffered in the line of duty."); *Medlin v. County of Henrico Police*, 34 Va.App. 396, 542 S.E.2d 33, 37 (2001) (testimony that only generally refutes the existence of a causal relationship between work-related stress and heart disease is not probative on the question of rebutting the statutory presumption). We find that the only difference between these cases and the ones that LAGERS cites is in how each court interpreted the expert testimony, whether it just rebutted the underlying premise or actually rebutted the presumption.

In New Hampshire, testimony from a doctor that there is no medical indication that the decedent's employment contributed to initiate or hasten the development of his heart disease and that the disease has unknown causes was not sufficient to rebut the presumption because it merely attacks the underlying premise of the statute. *Cunningham*, 525 A.2d at 720. And while his statement that the decedent's disease specifically was not caused by his employment as a fireman was on the threshold of being valid rebuttal evidence, "he still did not cite evidence of non-work-related risk factors that may have precipitated [decedent's] heart disease." *Id.* And when a former firefighter suffered from a heart attack during a tennis tournament some four years after retiring, he was entitled to benefits based on the statutory presumption that his heart problems were work-related. *City of Manchester Fire Dep't v. Gelinas*, 139 N.H. 63, 649 A.2d 50, 53 (1994). The medical expert believed that

the heart attack was triggered by the exertion of playing tennis superimposed on the plaintiff's underlying coronary artery disease. *Id.* at 52. He also testified that coronary artery disease is of unknown cause due to a multiplicity of factors and that firefighting was not a cause of his heart disease. *Id.* at 52, 53. This testimony just questioned the wisdom of the statutory presumption. *Id.* at 53. The slight evidence that plaintiff may have had some non-work-related risk factors was not sufficient to overcome the presumption that the heart disease was caused by his work. *Id.*

In North Dakota, testimony that a law enforcement officer's heart disease did not result from work-related stress but from risk factors and that he would have developed these problems sooner or later regardless of his employment was not sufficient to rebut the presumption. *Robertson,* 616 N.W.2d at 853, 855. In *Wanstrom,* plaintiff was a firefighter who developed chronic obstructive pulmonary disease and the worker's compensation bureau found that the presumption that this was caused by his work was rebutted. 621 N.W.2d at 866. Although one doctor testified that occupational smoke exposure was not a substantial contributing factor in the development of the lung disease, the other doctor could not rule it out as a factor. This evidence, therefore, did not support a finding that firefighting was eliminated as a substantial contributing factor. *Id.* at 868. The first doctor stated that plaintiff's work was not a substantial contributing factor because he did not have any severe exposure to smoke or toxic fumes that required medical care. *Id.* at 870. By saying that regular smoke exposure was not a substantial contributing factor, he was denying the statute's underlying premise. *Id.* So his evidence was insufficient to rebut the presumption, and, as the other doctor did not rule out

work as a factor, the presumption was not rebutted. *Id.*

The Virginia courts have held that showing the existence of risk factors alone is not sufficient to rebut the statutory presumption and does not establish a non-work-related cause of a disabling disease. *City of Portsmouth Sheriff's Dep't v. Clark,* 30 Va.App. 545, 518 S.E.2d 342, 346 (1999). In *Clark,* although there was evidence of the risk factors of smoking and family history, there was no evidence of the actual effect of either factor on the plaintiff's cardiovascular health. *Id.* at 346–47. So while the evidence may have established the existence of the risk factors, it was not sufficient evidence that the factors actually caused the heart problems. *Id.* at 347. To rebut the presumption, the employer had to produce "affirmative evidence of a non-work-related cause." *Id.* And when two doctors concluded that plaintiffs' heart disease was not caused by work, but by risk factors, because, as a general matter, there is no link between stress and heart disease and there is no evidence that employment as a police officer is a factor in causing heart disease, their evidence was of no probative value. *Medlin,* 542 S.E.2d at 36–38. The court held that "[t]estimony which merely refutes the premise of such a legislatively enacted presumption does not constitute proper evidence in rebuttal." *Id.* at 38. An employer may not repeal the statute by finding a doctor who believes that the statute is incorrect. *Id.* And in *Bass,* the court held that evidence of non-work-related causes of plaintiffs' heart disease, standing alone, did not overcome the statutory presumption because that evidence did not meet both parts of the test; it did not show that the disease was not caused by their employment. 515 S.E.2d at 563.

LAGERS' reliance on Oregon law is misplaced. Testimony that a firefighter's

employment was not a material contributing factor to his heart condition and that his work conditions were not associated with the cause of his heart disease was sufficient to overcome the statutory presumption. *Ingram v. SAIF Corp.*, 72 Or. App. 215, 695 P.2d 930, 931 (1985). Both experts stated that they believed that plaintiff's risk factors were the primary cause and development of his coronary artery disease. *Id.* But the statute in effect at the time of this case had a much lower standard for rebuttal than the current Oregon statute or our own. The statute said that "[a]ny condition or impairment of health [caused by any disease of the lungs or heart] shall be presumed to result from a fireman's employment.... Denial of claim for any condition or impairment of health [caused by such diseases] must be on the basis of medical or other evidence that the cause of the condition or impairment is unrelated to the fireman's employment." O.R.S. § 656.802 (1982); *Ingram*, 695 P.2d at 931. This is a lower standard than in our statute because it merely requires any medical evidence that the cause is unrelated to work, not competent evidence. Therefore, we do not find this case persuasive.

And although Tennessee's statute is similar to ours, the court there has decided to use what we believe is a lower standard to rebut the presumption. Under the statute, any heart disease that impairs the health of a law enforcement officer "shall be presumed (unless the contrary is shown by competent medical evidence) to have occurred or to be due to accidental injury suffered in the course of employment." TENN.CODE ANN. § 7–51–201 (2004). In Tennessee, "a medical opinion provided by a competent medical expert" is sufficient to rebut the presumption. *Benton v. City of Springfield*, 973 S.W.2d 936, 937 (Tenn. 1998). We read this to require only that the expert be competent, not that the evidence provided be competent. Therefore, it also does not apply.

LAGERS' reliance on *Buchanan v. Workmen's Comp. Appeal Bd.*, 659 A.2d 54 (Pa.Cmwlth.1995) is similarly misplaced. LAGERS claims that the Pennsylvania court found that the presumption was rebutted based on evidence from the medical expert about various risk factors that claimant had. But the court actually said that it would agree with claimant that the presumption was not rebutted if the testimony that LAGERS quoted was the sole basis for the doctor's opinion, because that went against the legislative determination that heart disease is causally related to fighting fires. *Id.* at 57. The court found that the presumption was rebutted because the doctor did give claimant the benefit of the rebuttable presumption but "went on to list a series of *other intrinsic factors* which he opined caused Claimant's heart disease." *Id.*

Dr. Farrar stated that Mr. Byous' coronary artery disease "resulted from his risk factors for developing coronary artery disease, not from working as a fireman." He also stated that while Mr. Byous' heart attack was precipitated by fighting a fire, "hard work alone, in the absence of coronary artery disease, will not cause a heart attack, and does not cause coronary artery disease." He did acknowledge that hard work contributed to the heart attack, although he said that the risk factors are the predominant cause. His statement that hard work cannot cause heart disease is a denial of the underlying premise of section 87.006. *See Gelinas*, 649 A.2d at 53. That is all that he offered to show that Mr. Byous' disease was not caused by his employment, and that is not enough. Although his first statement that Mr. Byous' disease was not caused by his work might be proper rebuttal, his later statement that hard work does not cause heart disease

shows that his basis for the first statement is a denial of the statute's underlying premise. And while he is not denying the statute's underlying premise for the heart attack, he also is not saying that work more probably than not did not cause the heart attack, just that it was not the main cause. This is not competent evidence, so Dr. Farrar's testimony did not overcome the presumption.

Dr. Lammoglia comes closer to meeting the requirements to rebut the presumption because he does not directly deny the statute's underlying premise. Instead, he says that Mr. Byous did not develop his coronary artery disease from his work as a firefighter. But he also could not state what else caused the coronary artery disease, merely that medical science knows that there are factors which are contributory and that influence the presence of the disease. He also acknowledged that the risk factors indicate a likelihood of contracting the disease, but that not everyone with those risk factors does so; "the risk factors are what's associated with coronary artery disease. So you can have those risk factors and not have coronary artery disease, but those risk factors can lead you to develop coronary artery disease." He said that he had no objective way of finding out whether Mr. Byous' work as a firefighter caused more risk or damage to his heart after his last exam, which did not detect any heart problems. And, as opposed to Dr. Farrar, he specifically said that the risk factors did not cause the coronary artery disease, they are only indicators of that disease. This does not establish a clear, non-work-related cause of the heart disease. *See Clark*, 518 S.E.2d at 346 (existence of risk factors alone is not enough to rebut the presumption). So he

was really denying that work could cause Mr. Byous' heart attack, the underlying premise of the section 87.006. *See Wanstrom*, 621 N.W.2d at 870. Because he did not know what caused the disease, he certainly did not show that it was more probably caused by something other than work. And although he said that Mr. Byous' disease was not caused by work, he could not definitively give a non-work-related cause. So this is also not competent evidence to rebut, and the presumption prevails.

Although the doctors mention the risk factors, they only discuss them broadly. They do not say that any one or combination of factors directly caused the heart disease, just that those risk factors lead to heart disease, which was not enough. *See Clark*, 518 S.E.2d at 346–47. Also, neither one stated that the risk factors were not caused by work. The risk factors themselves must be shown to not be work-related. *See Cunningham*, 525 A.2d at 721. Although smoking and genetic influences [6] are not work-related, the others could possibly be work-related and the doctors said nothing about the causes of those risk factors. And if they developed after he was working as a firefighter, they also cannot be relied upon. *See Robertson*, 616 N.W.2d at 855 ("Any reliance on a risk factor manifesting itself after [plaintiff] began working in law enforcement is misplaced."). Further, when considering these risk factors, neither doctor appeared to give Mr. Byous the benefit of the presumption before finding that there were other causes. *Cf. Buchanan*, 659 A.2d at 57. Work did not have to be the sole cause of Mr. Byous' disease, merely a significant contributing factor. Since neither doctor really ruled out the effect of his work, other than to deny the underlying

**6.** It should be noted that Mr. Byous has four siblings and only one died from premature coronary artery disease and his father died of

unknown causes. So genetic history is not a strong risk factor.

premise of the statute, firefighting did contribute to Mr. Byous' coronary artery disease.

## IV. Conclusion

To be competent evidence sufficient to rebut the section 87.006 presumption, the evidence must show that non-work-related causes more probably than not caused the disease and that work was not a significant contributing factor. Put another way, the defendant must show both that firefighting did not cause the disease and that there was a non-work-related cause of the disease. This non-work-related cause must have *caused* the disease, not merely be one of several factors, and it must not itself have been caused by work. LAGERS did not meet these requirements. LAGERS' experts merely attacked the statute's underlying premise. That is not competent evidence to rebut the presumption. They did not show that working as a firefighter more probably than not did not cause the coronary artery disease; they simply said that such work does not cause it. And while they mentioned risk factors, they did not show that those factors caused the disease, they just contributed or are indicators. The legislature created this statute to protect firefighters; this evidence is not sufficient to overcome that protection. So the presumption was not rebutted, and Mr. Byous was entitled to receive duty disability benefits under section 70.680.3. Because there was not competent evidence to rebut the presumption, the Board's decision is not supported by competent and substantial evidence. We reverse the finding of the Board and order the Board to award Mr. Byous the disability benefits.

Judge THOMAS H. NEWTON writes for the majority.

Chief Judge, EDWIN H. SMITH and Judges HAROLD L. LOWENSTEIN, JOSEPH M. ELLIS, VICTOR C. HOWARD, RONALD R. HOLLIGER and LISA WHITE HARDWICK concur.

Judge JAMES M. SMART writes in a separate concurring and dissenting opinion.

Judges ROBERT G. ULRICH, PATRICIA A. BRECKENRIDGE and PAUL M. SPINDEN concur.

JAMES M. SMART, JR., Judge, concurring in part and dissenting in part.

I concur in the result. I differ with the analysis as to the nature of the presumption created by the relatively simple statutory phrase: "unless the contrary be shown by competent evidence." In order to explain why I differ in part with the thoroughly researched majority opinion, it is necessary to explain also why I concur in the result the majority reaches. To a large extent, both have to do with the difficulty faced by medical science in being asked to identify causes of heart disease in a particular person.

In multifactorial diseases such as coronary artery disease, discussion of causation can be handled only through discussion of the existence and extent of "risk factors." Risk factors are characteristics of individuals who are more likely to develop a particular disease than the remainder of the population. Risk factors are indicators of increased relative probabilities.

Risk factors can include at least somatic factors (such as hyperlipidemia and hypertension), behavioral factors (such as cigarette smoking, alcoholism, poor nutrition, and so forth), genetic factors, and stress factors (such as environmental and occupational factors). Some risk factors, of course, can be more significant than others.

Because the statute says that the heart disease is presumed to have been suffered

in the line of duty unless "the contrary be shown by competent evidence," any discussion of the etiology of coronary artery disease must deal with the characteristics and conditions we call risk factors. An expert may in a few cases be able to compare and quantify the effect of certain risk factors with reasonable certainty, but in many other cases it will be virtually impossible to do so.

As the majority correctly points out, LAGERS had the burden of coming forward with evidence here. LAGERS presented the deposition testimony of Dr. Lammoglia and the medical records of Dr. Farrar, another treating cardiologist. Dr. Farrar stated in a letter his view that Mr. Byous' coronary artery disease resulted "from his risk factors for developing coronary artery disease, not from working as a fireman." Dr. Farrar went on to say that Mr. Byous' coronary artery disease resulted from "cigarette smoking, hypertension, hyperlipidemia and genetic influences indicated by a family history of premature coronary artery disease." Dr. Farrar's only comment as to the effect of Mr. Byous' employment acknowledged that the myocardial infarction was precipitated while fighting a fire; but Dr. Farrar went on to point out that "hard work alone, in the absence of coronary artery disease, will not cause a heart attack, and does not cause coronary artery disease." There is no indication that Dr. Farrar gave the matter of occupational risk factors any further consideration.

Dr. Lammoglia, who testified by deposition, stated he had "no objective way of finding out" whether the firefighting career contributed to the coronary artery disease. Again, there was no meaningful discussion of occupational stress. Neither physician discussed the nature and effect of Mr. Byous' duties as a firefighter over the many years. Also, neither physician discussed the causes underlying the development of the risk factors of hypertension and hyperlipidemia.

Two of the factors the doctors did identify (cigarette smoking and genetic factors) were not causally related to occupational stress. But the failure to discuss the causal components of the hypertension and of the hyperlipidemia—and to consider them in the light of potential occupational stress, left a substantial gap in LAGERS' effort to show by competent evidence (as opposed to speculation) that the heart attack was not suffered in the line of duty.

There was no evidence that the hypertension (high blood pressure) and the hyperlipidemia (high levels of blood cholesterols and triglycerides) were not somehow substantially related to the stress associated with being a firefighter over many years. Neither physician addressed the nature of Byous' duties over the years, or the effect of emergency operations or of the shift work that is common among firefighters. The doctors seemed to know enough about Mr. Byous' duties to conclude that Mr. Byous is currently disabled from performing such duties. But there is no indication the physicians made any effort to consider whether, for the purposes of cardiovascular health, the position of firefighter differs from being, say, a mailroom clerk.

The most glaring defect of the testimony of the physicians is that, after identifying hypertension as a risk factor, the physicians failed to recognize that hypertension itself is presumed to be work related under the terms of the statute. Hypertension is listed in Section 87.006 as presumed to have been incurred in the line of duty unless "the contrary be shown by competent evidence." Because there was no evidence that the hypertension was not work-related, the hypertension itself must therefore be considered to have arisen in the

line of duty. Thus, the failure of the physicians to present evidence that the hypertension was not work-related was a serious defect in LAGERS' case.

Although they seemed not to know it, the physicians here were being specifically asked to address the risk factor of occupational stress. It is not a matter of hard physical labor. Thus, it is an inadequate response to say, as Dr. Farrar did, "hard work alone, in the absence of heart disease, never caused a heart attack ..." Although that statement is no doubt true as far as it goes, it misses the point. First, it begs the question, where did the heart disease come from? Dr. Farrar acted in part like he thought the issue was whether Mr. Byous particular activities at the time of the attack were the cause of the attack. Did he forget or did he not know that 87.006 talks about heart *disease* and not heart *attacks* ? The issue was about Mr. Byous career as a firefighter and the effect of the occupational factors on his heart disease. Second, Dr. Farrar's comment that hard work does not cause heart disease was beside the point because he ignores the obvious: that there is more involved in fire fighting than hard physical labor. Otherwise, there is little reason for the legislature to create the presumption for police and firefighters and not for maintenance workers.[1]

Because there is no meaningful discussion of the occupational risk factors of the claimants' career as a firefighter and because there is no competent evidence addressing the underlying causes or the risk factors contributing to the hypertension and the hyperlipidemia, I agree that the line-of-duty presumption was not rebutted

by competent evidence. Thus, I agree the ruling must be reversed.

I wish to dissent from the analysis of the majority to the extent that it reaches issues unnecessary to the resolution of this case, and to the extent that it rejects the usual rule of Missouri law and purports to adopt a "Morgan rule" with regard to the presumption.

The majority, after correctly holding that the line-of-duty presumption was not rebutted, attempts to address the question of what happens when the presumption *is* rebutted. In an effort to provide guidance, the majority reaches the conclusion, after a survey of various states, that the presumption here is a Morgan presumption. The majority does this by speculating about the intent of the Missouri statute without simply taking the language of the statute at face value. The majority then goes even further in concluding that the presumption cannot be overcome without showing a specific non-work cause of the heart disease.

All of that portion of the majority opinion relating to the effect of the rebuttal of the presumption is pure *obiter dictum*. This was a case in which the presumption was not rebutted. All we need decide here is that the presumption was not rebutted. Because it was not rebutted, Byous wins. End of case.

In deciding as it does on the nature of the presumption, the majority unfortunately errs. In deciding that the statute creates a Morgan presumption, the majority rejects *Sprague*, the one published Missouri case, dismissing it as though it has

1. It could also be noted that the legislature provided in Section 287.120 of the Workers Compensation Act that "[t]he ability of a firefighter to receive benefits for psychological stress under 287.067 shall not be diminished by [the requirement that the work-related

stress be shown to be 'extraordinary and unusual']." Perhaps that is because the legislature believed stress is such a regular matter for firefighters that it would be difficult to show that stress was of an "extraordinary and unusual" degree for those in that occupation.

no precedential value because the opinion in *Sprague* invoked Rule 84.16(b). Cases may be decided under Rule 84.16(b) without a formal opinion when the case is an affirmance and the judges believe that the case has no precedential value. *Id.* It is, of course, inconsistent for a court to publish an opinion while invoking a court rule suggesting that the ruling is not worthy of publication. It is easier to believe that the reference to Rule 84.16(b) was an oversight than it is to believe that publication of the opinion was an oversight. Therefore, it is not at all clear that the *Sprague* case should be regarded as without precedential effect and that New Hampshire law should be preferred over Missouri law.

Because heart disease, hypertension, and hyperlipidemia are multifactorial diseases, the majority errs in interpreting the statutory presumption as requiring for rebuttal that LAGERS prove the *specific cause* of the coronary artery disease. The meaning of the phrase "unless the contrary be shown by competent evidence" can be readily understood without resorting to court decisions of other states having different firefighter disability statutes.

The first thing the phrase means here is that if *no one* presents competent evidence as to work causation, the claimant automatically wins his claim. The statute relieves the claimant of the burden of producing evidence. In a case without any evidence, the claimant must win, because the burden of producing competent evidence was shifted by statute to LAGERS. This is a huge benefit to the claimant in view of the multifactorial nature of heart disease, because otherwise the claimant faces the great burden of proving the heart disease was suffered in the line of duty. But while the benefit of the statute is potentially great, nothing in the statute suggests that the statute was intended to have virtually conclusive effect, as I believe the majority's strained interpretation of the statute would do in practical effect.

If the cardiologist in a heart disease case were familiar with the claimant as a patient, and with the nature of the claimant's work and the claimant's work history in the fire department, and with the claimant's off-duty habits and lifestyle and family medical history, that cardiologist may have a basis to express, with reasonable medical certainty, an opinion as to the development of the pertinent risk factors and the relation thereto of the claimant's particular occupational stress. For instance, to give a rather extreme example, a physician might say something to the effect of:

> "Well, the claimant was an instructor of pyrotechnics at the fire academy for most of his career. By his account and that of others, he loved his work. The environment of the job was congenial. It was a forty-hour week. No shift work. No danger. No emergencies. I can say with reasonable medical certainty that occupational stress was not a factor. I cannot say what did cause the heart attack, but the significant risk factors that can be identified include ... [*e.g.*, genetics, stress at home due to a child's chronic medical problems, poor diet, cigarette smoking ...]."

If I understand the majority correctly, this testimony would *not* be sufficient, in their view, to rebut the presumption. Under a proper understanding of the statute, however, such evidence would constitute a showing by competent evidence that the heart attack was not work-related.

If the physicians testifying in this case had made remarks showing an articulable, reasonable basis to conclude that the claimant's work was not a factor in the development of the significant risk factors (something way beyond the notion that "hard work does not cause a heart at-

tack"), I would be arguing that the Board's decision in favor of LAGERS should be affirmed. To the extent that such testimony ruling out occupational factors is believed, the Board can, even in a case involving less extreme facts than our hypothetical, regard the line-of-duty presumption as having been rebutted. The Board in such a case is not bound to rule in the claimant's favor when it believes the evidence to the contrary.

This statute says the line-of-duty-presumption exists "unless the contrary be shown by competent evidence." It does not say, "unless there is competent medical evidence identifying a specific non-work cause of the disease." It is enough to defeat a claim if a physician acquainted with the pertinent risk factors as to a particular claimant's disease can provide, with reasonable medical certainty, an articulable and reasonable basis (which the physicians in this case did not do) to conclude that the risk factors were not incurred or aggravated by duty. That is, it is enough to defeat the claim if the testimony is believed by the LAGERS Board of Trustees—even if the physician cannot state with particularity any specific non-work *cause* of the risk factors.

ULRICH, BRECKENRIDGE and SPINDEN, JJ., concur in separate opinion of SMART, J.